WILLIAM B. OWENS, Executor of Will of JOHN B. HARPER, and NELLIE MAY OWENS v. MEN AND MILLIONS MOVEMENT and NATIONAL BENEVOLENT ASSOCIATION OF CHRISTIAN CHURCH, Appellants.

Division One, December 18, 1922.

1. **WILL: Construction: Die Without Issue.** The words of a will that if certain devisees "die without leaving any issue" mean "if they should die during the lifetime of the testator" leaving no issue, unless by very clear words he has manifested a contrary intention.

2. ———: ———: ———: **Executory Devise Over.** Where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of such devisee's death without issue, the words refer to the death of such primary devisee within the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple.

3. ———: ———: ———: ———: **This Will.** After making certain special bequests to numerous benevolent societies, the testator by the seventh clause of his will gave the residue of his property to his daughter and her husband "to be owned and held by them

jointly, to have and to hold unto them and their heirs and assigns forever." By the eighth clause he declared that "in the event of the death" of the daughter and son-in-law said residue was to go to a granddaughter, and by the ninth clause he expressed his "earnest desire and wish" that his daughter and son-in-law would from time to time "give and make proper provision" for the grand-daughter. The tenth clause declared that "it is my will in case my said daughter and son-in-law and granddaughter should all die without leaving any issue, then in such event all of my said property, real and personal, shall be divided into four equal parts, and one part shall go to each" of the defendants. *Held;* first, that the seventh clause, if it stood alone, unquestionably gave the residue in fee simple absolute to his daughter and son-in-law; *second,* the words in the tenth clause "should all die without leaving any issue" meant that should his daughter, son-in-law and granddaughter all die during testator's own lifetime the residue should go to defendants, but not otherwise; and, *third,* as the daughter and son-in-law survived the testator, they took an absolute estate, and defendants took nothing.

4. ———: ———: ———: Statute: Indefinite Failure of Issue. The statute (Sec. 2268, R. S. 1919) declaring that "where a remainder in lands . . . shall be limited . . . to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor" was enacted for the purpose of abrogating the early common-law rule under which the words "die without leaving issue" were construed to mean an indefinite failure of issue, and it has no application to the question whether the words "die without leaving issue" refer to the death of the devisees before the testator's death or to their death at some subsequent time.

Appeal from De Kalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*Grant & Grant* for appellants.

(1) Where there is a devise to two or more persons, with the proviso that in case of the death of one or more of them, dying without issue, the survivor is to

take, the happening of the contingency of the first taker dying without issue is not restricted to the lifetime of the testator. Sec. 2268, R. S. 1919; Trust Co. v. Curby, 255 Mo. 393, 411. (a) The Supreme Court of the United States, except where a contrary holding in the state where the cause arises has been so uniform as to amount to a rule of property, holds that the addition of the words "dying without issue," or "under age," or similar words, indicates a contingency without reference to the time of the death of the testator. In such case, upon the death of the first taker at any time, without issue, the executory devise will take effect even though a fee has been vested in the first taker. Britton v. Thornton, 112 U. S. 526. (b) The rule is well settled in other states that when the death of the first taker is coupled with circumstances which may or may not take place, as, for instance, dying without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words upon the death at any time, whether before or after the death of the testator. Ahlfield v. Curtis, 229 Ill. 139; Carpenter v. Loan Co., 229 Ill. 486; Fifer v. Allen, 228 Ill. 507; Cartnell v. Ransom, 119 S. W. 800; Harvey v. Bell, 118 Ky. 512; Varble v. Phillips, 14 Ky. L. Rep. 363; Thaxton v. Watson, 84 Ky. 206; Smith v. Ballard, 117 Ky. 179; Buchanan v. Buchanan, 99 N. C. 309; Smith v. Stewart, 4 De G. & S. 253. (c) This is also the rule in England, from whom we get our common law. Randfield v. Randfield, 8 H. L. Cas. 225; Ingram v. Soutten, L. R. 7 H. L. 408; O'Mahoney v. Burdett, L. R. 7 H. L. 388; Edwards v. Edwards, 15 Beav. 357; Child v. Giblette, 3 Myl. & K. 71. So, also, in Canada. Trail v. R., 7 Can. Exch. 98; Cowan v. Allen, 26 Can. S. C. 292; Fraser v. Fraser, 26 Can. S. C. 316; Gould v. Stokes, 26 Grant Chan. (U. C.) 122. (2) Under the common law, a dying without issue, or words of similar import, meant an indefinite failure of issue. A limitation over to B in fee upon the death of A and

Owens v. Men and Millions Movement.

an indefinite failure of issue in A, would be a contingent remainder, and would be void for remoteness. In such case, the first taker would take an estate tail. Since our statute was enacted, however, the first taker is vested not with an estate tail, but in fee simple, subject to be determined upon his dying without issue at the time of his death. Gannon v. Albright, 183 Mo. 238. An analysis of the cases holding that "dying without issue" means issue during the life of the testator, will show that they are bottomed upon a course of reasoning having its source in the technical rules of the common law relating to indefinite failure of issue, as stated above, or upon a rigid and technical adherence to precedent long after the reasons for such precedent no longer existed. Sometimes they are adhered to because the precedents have become rules of property, which, however, do not exist in this State. (3) The use of the words "heirs and assigns" in the devise to the plaintiffs was mere surplusage, and did not give them any added power of disposition of a kind to defeat the limitation over of the executory devise. Hull v. Calvert, 226 S. W. 553.

*Hewitt & Hewitt* for respondents.

(1) Under the seventh clause of the will the beneficiaries named therein having survived the testator took the residuary estate absolutely. When the court reached that conclusion there was nothing further for the court to do but find that subsequent clauses eight and ten were void. The case of Trust Co. v. Curby, 255 Mo. 393, is not in point. (2) As there are no conditions or circumstances coupled with the first takers in the instant case, subdivision "b" of appellants' first point is not applicable. The case of Gannon v. Allbright, 183 Mo. 238, militates against them. (3) While it is true that under our statute the word "heirs" or "heirs and assigns" are not necessary to convey the fee, yet, the language is seldom omitted by careful law-

yers. And, the use of these words under accepted rules of construction is no longer allowed as in any wise making doubtful the intent of the testator to pass a fee simple title. Garrett v. Wiltse, 252 Mo. 699, 709; Henderson v. Calhoun, 183 S. W. (Mo.) 584; Howard v Howard, 184 Mo. 993; Settle v. Shaffer, 229 Mo. 568; Cannon v. Allbright, 183 Mo. 238. There is no question, nor can there be any as to the proper construction to be put upon that part of the will down to and including the words "their heirs and assigns forever" at the close of the seventh clause, as to the clear intent of the testator, i. e., after the payment of the debts, expense and specific bequests, to transmit the fee absolute of the residue of said estate to those named in said seventh clause. (4) An absolute bequest to a person, followed by the expression "in case of his death" cannot be construed to mean "at his death" or from his death, the element of contingency being absent in that case, as no proper force could be given to the expression "in case of." Fisher v. Fisher, 75 N. J. Eq. 74. The expression "in case of the death of" unexplained refers to the event of the death happening before the death of the testator. This rule is universal, insofar as we can find. Morgan v. Robbins, 152 Ind. 362; Feal v. Richardson, 160 Ind. 119; Farbell v. Smith, 125 Iowa, 388; Ex Parte Strasman, 6 Ky. Law Rep. 738; Jackman v. Jackman, 24 Ky. Law Rep. 224; In re Engles Estate, 180 Pa. St. 215. (5) When a testator devises realty and personalty to two persons, providing that in the event one of them should die without issue living at the time of his death his share should go to the other child, this language has a fixed legal meaning, and refers to the death of the person within the lifetime of the testator. First National Bank v. DePauw, 86 Fed. 722, 30 C. C. A., 360; Morgan v. Robbins, 152 Ind. 362. (6) The intention of the testator is to be ascertained within the four corners of the instrument, giving due regard to the directions and the true intent and meaning of the testator. Sec.

555, R. S. 1919. No doubt can arise under the seventh clause of the clear intent of the testator to transmit to and vest in the son-in-law and daughter the fee. (7) But, if there be any doubt created by said seventh clause (which is not conceded), under the eighth clause it is plain that the testator intended that his property, after the payment of the specific legacies and debts, should go in accordance with the law of descent and distribution. And, if there be any ambiguity, the law presumes the testator so intended. 40 Cyc. 1412. (8) The donees named in the seventh clause, being alive at the death of the testator, became the absolute owners of all the property of which testator died seized, remaining after the payment of the specific legacies and debts. Henderson v. Calhoun, 183 S. W. 584; Garrett v. Wiltsie, 252 Mo. 699; Howard v. Howard, 184 S. W. 993; Settle v. Shafer, 229 Mo. 568; Roth v. Rauschenbusch, 173 Mo. 582; 40 Cyc. 1712. (9) And the law favors vested estates, and where there is a doubt as to whether the remainder is vested or contingent the courts construe it as vested. Chew v. Keller, 100 Mo. 369; Colliers Will, 40 Mo. 287. (10) The devise by the seventh clause is so clear and concise and positive, that no room for doubt is left of the intent of the testator to vest the fee in the donees named therein. This may not be cut down or taken away, by subsequent words which are not as clear and decisive. Yocum v. Siler, 160 Mo. 281; Newell v. Kerns, 218 S. W. 445.

RAGLAND, C.—This is an action to construe the will of John B. Harper, deceased. The executor and all the devisees and legatees are parties. No question is raised as to the sufficiency of the pleadings, nor as to the circuit court's jurisdiction in the premises. The judgment of that court construed the will adversely to the contentions of two of the defendants, namely, the Men and Millions Movement and The National Benevolent Association of the Christian Church, and each ap-

pealed therefrom. The same questions of law being raised on each appeal, the appeals by stipulation have been consolidated, and will therefore be treated as one cause.

After providing specific legacies for the Missouri Christian College at Camden Point, the State Missionary Board of the Disciples of Christ, the Christian Benevolent Society of St. Louis and the Christian Orphans' Home of St. Louis, the will proceeds as follows:

"Seventh. I give, devise and bequeath all the residue and remainder of my property that I may die seized, after the payment of the aforesaid bequests, to my daughter Nellie May Owens and to my son-in-law William B. Owens to be owned and held by them jointly, to have and to hold unto them and their heirs and assigns forever.

(John B. Harper.)

"Eighth. In case of the death of both my daughter Nellie May Owens and my son-in-law William B. Owens, then in that event, after the payment of the legacies above mentioned, I give, devise and bequeath to my granddaughter, Wavelee Oliver, formerly Wavelee Owens, all the residue and remainder of my property that I may die seized to have and to hold unto her, her heirs and assigns forever.

"Ninth. It is my earnest desire and wish that my said daughter and son-in-law shall from time to time and as they shall deem fit and proper give or make proper provision for my said granddaughter Wavelee Oliver, formerly Wavelee Owens, and leaving the making of such gifts or provisions to the discretion of my said daughter and son-in-law.

"Tenth. It is my will in case my said daughter and son-in-law and granddaugter should all die without leaving any issue, then in such event all of my said property, real and personal, shall be divided into four equal parts, and one part shall go to each of the following—that is to say: one part to the Men and Million Movement; one part to the Christian Orphans' Home of

St. Louis, Missouri; one part to the State Missionary Board to the use of the counties now comprising the Seventh District of the Disciples of Christ, of Northwest Missouri; and one part to National Benevolent Association of the Christian Church, present address, 2955 North Euclid Avenue, St. Louis, Mo.

"I hereby appoint my son-in-law, William B. Owens, and my daughter, Nellie May Owens, executors of this my last will, and it is my will that they be not required to give bond. In case of the death of both my son-in-law and daughter, then in that event it is my wish and desire that my granddaughter be permitted to choose an executor. And it is my further will and it is hereby provided that in the event of the death of my daughter Nellie May Owens, and my son-in-law, William B. Owens, and my granddaughter, Wavelee Oliver, that Roy. V. Neff, of Cameron, Missouri, be appointed to act as my executor of this my last will.

"In Witness Whereof, I have signed and sealed, published and declared this instrument as my last will and testament at the City of Maysville, Missouri, this the 13th day of September, 1919.

"JOHN B. HARPER, (Seal)"

The oral evidence offered in connection with the will was brief. The facts disclosed by it may be summarized as follows: At the time the will was written testator's wife was dead, and Nellie May Owens and Wavelee Oliver, nee Owens, his daughter and granddaughter, respectively were his only living descendants. They both survived him, as did his son-in-law, William B. Owens. His estate then and at the time of his decease consisted of 1800 acres of land and personal property of the value of about $20,000. For a number of years prior to his death, testator, his daughter, granddaughter and son-in-law, lived together as one family. He was a member of the Christian Church or Disciples of Christ and took conspicuous interest in its institutional work. During his life he manifested in a marked degree his

sense of obligation to both his family and his church. He was regarded as a man of strong character and unusual business acumen.

The controversy arises over the construction to be given paragraphs "Seventh" and "Tenth" of the will and particularly with reference to the contingency described in the latter in this language: "in case my said daughter and son-in-law and granddaughter should all die without leaving any issue, then in that event," etc. There can be no question but that under paragraph "Seventh," if it were standing alone, Nellie May Owens and William B. Owens would take an estate in fee simple in the lands devised. If "die without leaving any issue," as used in the "Tenth" paragraph, means dying within the lifetime of the testator, then the contingency never happened, and never can happen, and their title is absolute. On the contrary, if "die without leaving any issue" refers to a time subsequent to the death of the testator, then the two paragraphs when read together give Nellie May Owens and William B. Owens merely a defeasible fee. Their estate would terminate upon their dying without issue. Whether, therefore, they take the fee subject to an executory devise, or whether they take absolutely, depends upon the construction adopted with respect to the words, "die without leaving any issue."

Decisions construing the meaning of the words, "dying without issue," or words of like import, when used in wills are without number. Some of the cases take the view that when the context is silent, words referring to the death of the first taker in connection with some collateral event, apply where the contingency happens after, as well as before, the death of the testator. [Britton v. Thornton, 112 U. S. 526; Fifer v. Allen, 228 Ill. 507.] But the great weight of authority supports the rule, that when real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death, without issue, the words refer to a

death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. The intention of the testator is presumed to be to prevent a lapse. [Kohtz v. Eldred, 208 Ill. 60, 69; King v. Frick, 135 Pa. St. 575; Calloway v. Calloway, 171 Ky. 366, 372; Tarbell v. Smith, 125 Iowa, 388; Lumpkin v. Lumpkin, 108 Md. 470; Morgan v. Robbins, 152 Ind. 362; Vanderzee v. Slingerland, 103 N. Y. 47; Skey v. Barnes, 25 Eng. Rul. Cas. 603, American Note; 28 R. C. L. 259.]

The rule just stated is in accord with the settled policy of the courts of both this country and England, that words of doubtful meaning will be so construed as to favor the heir; as to give an estate of inheritance to the first devisee; as to vest the title to an estate so that it will not remain in abeyance. In Scofield v. Olcott, 120 Ill. 362, 374, it was said: "It has long been a settled rule of construction, . . . that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has, by very clear words manifested an intention that they should be contingent on a future event." And again, it was said by Justice SHARSWOOD in Mickley's Appeal, 92 Pa. 514, 1. c. 577, that "the first taker is always the first object of the testator's bounty; and his absolute estate is not to be cut down to an estate for life, or, what is practically the same thing, to be subjected to an executory gift over, upon the occurrence of the contingency of death, or death without issue, at any future period within the rule against perpetuities, without clear evidence of such an intent."

But of course the rule, that where property is devised to one with a provision for a gift over in case of the death of the devisee without issue, the event referred to is death without issue during the lifetime of the testator, like all other subordinate aids to construction, must give way to the primary rule that the intent of the testator is to be gathered from the four corners of the

instrument, giving effect if possible to all its language. Accordingly if there are expressions in the will which indicate that the testator referred to death subsequent to his own demise, they must be given effect. [Schnitter v. McManaman, 85 Neb. 337.]    However, we find no such indication in the will before us.    On the contrary it is reasonably clear that the testator was but making a devise of his residuary estate in the alternative.    If Nellie May Owens and William B. Owens were dead when the will took effect, the estate was to go to Wavelee Oliver; if all three were dead, then it was to go to appellants.    The possibility that his daughter and son-in-law, or both they and his grandmother, would predecease him was evidently in his mind.    By paragraph "Eighth" he provided that, "in case of the death of both my daughter, Nellie May Owens, and my son-in-law, William B. Owens, *then and in that event, . . . I give, devise and bequeath to my granddaughter, Wavelee Oliver, . . . all the residue,"* etc.    In the concluding language, which dealt with the appointment of an executor, he said: ". . . it is my further will . . . that in the event of the death of my daughter, Nellie May Owens, and my son-in-law, William B. Owens, and my granddaughter, Wavelee Oliver, that Roy V. Neff, of Cameron, Missouri, be appointed to act as my executor of this, my last will."    Manifestly these provisions related to deaths occurring before the taking effect of the will.    And there is no reason to believe that the testator had in mind any different contingency when he used the language: ". . . in case my said daughter and son-in-law and granddaughter should all die without leaving any issue, *then in such event all of my said property shall be divided into four equal parts, and one part shall go,"* etc."

In support of their contention that the words, "die without leaving any issue," in paragraph "Tenth," should be construed as meaning death whenever it should occur, whether before or after the death of the testator,

appellants invoke the statute (Sec. 2268, R. S. 1919) which provides:

"Where a remainder in lands or tenements, goods or chattles, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

This statute was enacted for the purpose of abrogating the early common-law rule under which the words "die without leaving issue" were construed to mean an indefinite failure of issue. [Naylor v. Godman, 109 Mo. 543, 550; Yocum v. Siler, 160 Mo. 281, 295.] The question in this case is not whether the words "die without leaving any issue" mean issue living at the time of the death of the ancestor, or an indefinite failure of issue, but whether they refer to deaths occurring during the life time of the testator, or subsequently. The rule of construction embodied in the statute is therefore inapplicable. [2 Jarman on Wills (6 Ed.) 1963.]

The judgment of the trial court is in harmony with the views herein expressed. It is accordingly affirmed. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-LAND, C., is hereby adopted as the opinion of the court All of the judges concur.