F. E. STEVENSON v. ANNA B. STEARNS ET AL., Appellants, ARTHUR D. CAMPBELL, METROPOLITAN LIFE INSURANCE COMPANY and PHOENIX TRUST COMPANY.—29 S. W. (2d) 116.

Division Two, June 11, 1930.

*Thomas P. Burns* and *Bryan, Williams & Cave* for appellants.

*Geo. F. Heindel* for respondents.

650

WALKER, J.—This is a suit to quiet title to certain land in Linn County, described as follows:

"The south half of the southwest quarter and the southwest quarter of the southeast quarter and the north half of the southeast quarter of the southeast quarter, all in Section 8, Township 57, Range 21."

This land was owned in his lifetime by Marion A. Stearns, who is the common source of title, and who died testate, January 1, 1910. This suit was brought in Linn County and was taken on a change of venue to Macon County, where it was tried, resulting in a decree in favor of the plaintiff, from which the individual defendants have appealed.

The plaintiff claims to be owner in fee simple of the land described. Other than the Metropolitan Life Insurance Company, the Phoenix Trust Company and Arthur D. Campbell, the defendants are the widow of Marion A. Stearns, deceased, his children and their spouses and his grandchildren. Certain of these defendants claim that the plaintiff's title is limited to a life estate; and that they are the fee simple owners of the land. The Metropolitan Life Insurance Company is the owner of a note, secured by a deed of trust on the land, executed by persons through whom the plaintiff claims title before he acquired the same. The Phoenix Trust Company was the owner of a note secured by a deed of trust subject to the deed held by the Metropolitan Life Insurance Company. Arthur D. Campbell is the trustee in the deed of trust securing the note.

The decree rendered by the trial court established the plaintiff's title, subject to the note secured by the deed of trust of the Metropolitan Life Insurance Company; that the note held by the Phoenix Trust Company had been paid and that Arthur D. Campbell had no interest in the proceeding, and that the defendants, other than as stated, had no right, title or interest in the land or a lien thereon or a demand thereto. A construction of the will of Marion A. Stearns is necessary to a determination of the issues in this case. The portions of said will necessary to said construction are as follows:

Clause Three: "I give and devise to my daughter Julia, wife of D. L. Hinton, the South half of the Southwest quarter of Section 8, Township 57, Range 21, in Linn County, Missouri.

"To have and to hold the same as her sole and separate property, freed from all debts and obligations of her present husband, or any future husband."

Clause Five: "I give and devise to my daughter, Agnes Stearns, who is now single, the Southwest quarter of the Southeast quarter, and the North half of the Southeast quarter of the Southeast quarter of Section 8, Township 57, Range 21, in Linn County, Missouri, subject to the following conditions:

"That my wife, Anna B. Stearns, shall have control of said land during her life and shall give to Agnes a home so long as she remains single."

Clause Six: "In the event of the death of my said daughters or any of them, leaving child or children of any lawful marriage or descendants of such child or children living at the time of the death of the daughter, then in that event the lands and estate herein given to them respectively, so dying, shall pass to and vest in fee in such child or children, or the descendants of such child or children then living; but should any of my daughters die, leaving no child or children or descendants of a child or children then living, the estate herein given to them respectively shall pass to and vest in my surviving children or their descendants then living, share and share alike. My intention is that in the meaning and construction of this will the question of vested and contingent remainders shall never arise or in any manner be considered."

The widow and all of the children survived the testator. Agnes I. Hoover, the devisee named in the Fifth clause of the will, after the death of the testator, intermarried with one W. C. Hoover. On March 11, 1915, Julia A. Hinton, devisee under the Third clause of the will, and her husband, D. L. Hinton, made and executed a warranty deed to Agnes I. Hoover and W. C. Hoover, conveying to them the South half of the Southwest quarter of Sec. 8, Township 57, Range 21, Linn County, the same being the land devised to said Julia under the Third clause of the will.

On the same day Anna B. Stearns, the widow of the testator, to whom had been devised a life estate in the Southwest quarter of the Southeast quarter and the North half of the Southeast quarter of the Southeast quarter, Sec. 8, Township 57, Range 21, Linn County, with remainder over to Agnes I. Hoover, nee Stearns, conveyed by quitclaim deed the above described land to Agnes I. Hoover and her husband, W. C. Hoover. Upon the execution of these deeds Agnes I. and her husband, W. C. Hoover, took possession of the lands described and continued therein until the sale of the same under the deed of trust hereinafter set out.

On February 28, 1921, Agnes I. and W. C. Hoover made and executed to Arthur D. Campbell, trustee for the Phoenix Trust Company, a deed of trust on said land to secure the payment of a note for $8,000, executed by them to said Trust Company.

On March 20, 1921, the said Trust Company assigned the note for $8,000 to the defendant, the Metropolitan Life Insurance Company, which now holds the same.

Subsequently, on the 10th of February, 1922, Agnes I. Hoover and W. C. Hoover, her husband, to secure the payment of a note made by them for $2250, made and executed a deed of trust to one Fruin, trustee for A. E. Young, upon the south half of the southwest quarter and the southwest quarter of the southeast quarter and the north half of the southeast quarter of the southeast quarter of Section 8, Township 57, Range 21, Linn County, the same being the land devised in Clauses Three and Five of the testator's will. Thereafter, default having been made in the payment of the note for $2250, the trustee, under the terms of the deed of trust, proceeded to and did sell the same. At that sale the plaintiff, F. E. Stevenson became the purchaser and a trustee's deed was made conveying said land to him. He thereupon took possession of said land and has since been in the sole possession of it claiming the same as the owner.

The six assignments of error made by the appellants may be epitomized as challenging the effect the Sixth clause of the will has upon the Third and Fifth clauses of the same.

I. It is true that the hallmark of judicial interpretation in ascertaining the meaning of a will is the intention of the testator, expressed in clear and unequivocal terms. [Sec. 555, R. S. 1919; Hannibal Tr. Co. v. Elzea, 315 Mo. l. c. 486; Schee v. Boone, 295 Mo. l. c. 221.] Equally elementary and of like force in construing a will is the rule that the entire instrument must be considered as a whole. [Sorenson v. Booram, 317 Mo. 516, 297 S. W. 70; Snow v. Ferril, 8 S. W. (2d) 1008.]

Standing alone, there is nothing in either clause Three or Five to indicate that the purpose of the testator was to limit the tenures of Julia and Agnes to life estates in the lands devised. Especially is this true in the case of Julia, the language employed being that "she shall have and hold the land devised as her sole and separate property, freed from all debts and obligations of her present or any future husband." These words neither express nor imply a limitation upon her title, but on the contrary, while creating an absolute title in her, simply exclude the interest or control of her husband. In face of the clear and concise language employed, ample to create an absolute fee, there is no rule of construction which will authorize the creation by implication of a life estate in Julia.

Under Clause Five the absolute devise of the land therein described to Agnes is subject to no limitation, other than the life estate of her mother, Anna B. Stearns. This construction of the

words employed is as evident to the lay reader as to one versed in the rules of legal terminology.

II. Appellants contend, however, that this construction of the meaning of Clauses Three and Five ignores the provisions of Clause Six, which, if properly construed under the rule that all of the provisions of a will should be read together, limit the devises created by Clauses Three and Five to the creation of estates for life in Julia and Agnes. If this rule is applicable the contention of the appellants should be sustained. To determine the legal propriety of its application consideration must be given to other canons of construction equally emphatic and of like potentiality in the construction of wills containing similar provisions.

III. Preliminary to a consideration of these canons it is pertinent to determine what is meant by the testator in Clause Six which it is contended limits the application or restricts the meaning of Clauses Three and Five. The language employed by the testator in Clause Six in reference to the disposition of the respective estates of his daughters under the will, upon their death, leaving a child or children, is as follows: ''in the event of the death of my said daughters or any of them, etc.,'' and in referring to those dying without children the words employed are: ''but should any of my daughters die leaving no child or children, etc.'' The interpretation to be given to language of this character in wills, in which there are clear and unambiguous provisions designating that the primary devisees (in this case the daughters) shall take fee simple titles upon the death of the testator, is that the limitations in regard to the vesting in secondary beneficiaries has reference only to the death of the daughters before that of the testator.

This construction is authorized by many cases cited in recognized texts, to the effect that if an estate in fee simple is clearly and unequivocally vested in one person with a limitation over to another upon such first named person's death, or in case of his death not coupled with any contingency of time or otherwise the provision in regard to the secondary devisee is invariably construed as referring to the death of the primary devisee before the testator. [1 Tiffany on Real Property, secs. 33 and 166, and cases.]

We are not without well considered authority in this jurisdiction to sustain that rule. To illustrate: this court has frequently held that a devise of real estate in terms clearly indicative of an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in the event of the death of a primary devisee, has reference to such death during the life of

the testator, whereupon the primary devisee, in the absence of unambiguous words to the contrary, will take an absolute estate in fee simple in the land devised. [Northcutt v. McAllister, 297 Mo. 475, 485; Owens v. Men and Millions Movement, 296 Mo. 118, 119; Ewart v. Dalby (Mo.), 5 S. W. (2d) 428, 433 et seq.; Real Estate v. Megaree, 280 Mo. 41, 50, and cases; Henderson v. Calhoun, 183 S. W. (Mo.) 584, 586.]

IV. Certainty in the words creating the estates of Julia and Agnes and uncertainty in the words employed in Clause Six in placing a limitation upon the estates thus created, is, generally speaking, the reason for the construction we have given to these words. To particularize: the words, "In the event of the death of my said daughters" etc., and "should any of my daughters die," etc., used in referring, in Clause Six, to the death of the daughters, indicate an uncertainty or contingency as to their death and authorizes the presumption that the testator has reference to their death prior to his own.

When, therefore, a will refers to the death of the immediate or primary beneficiary as a contingent event, as "if he die," or "in the event of his death," or similar language, the law presumes that the contingency is the death of such beneficiary before the death of the testator and the gift over will take effect only if the first or primary beneficiary dies during the lifetime of the testator. [Dameron v. Lanyon, 138 S. W. (Mo.) l. c. 3; Henderson v. Calhoun, 183 S. W. (Mo.) l. c. 586; Howard v. Howard, 184 S. W. (Mo.) l. c. 994; Huntington Real Estate Co. v. Megaree, 217 S. W. (Mo.) l. c. 303, 305; Northcutt v. McAllister, 297 Mo. 475, 485, 249 S. W. l. c. 400-401.]

The rule more tersely stated is to this effect: that where, as at bar, the devises to Julia and Agnes are made in clear, concise and positive language, they cannot be cut down or their meaning modified by subsequent words not clear and decisive. [Schee v. Boone, 295 Mo. l. c. 227, 243 S. W. l. c. 884; Allison v. Hitchcock, 309 Mo. 488, 274 S. W. l. c. 799; Newell v. Kerns, 218 S. W. 445; Yocum v. Siler, 160 Mo. 281; Sevier v. Woodson, 104 S. W. (Mo.) l. c. 4.]

Reasoning by analogy and as further illustrative of the intention of the testator, if he had, in providing remainders over in the estates of Julia and Agnes, said, "Upon the death of my daughters," or "at the death of my daughters," or "when my daughters die," or words of similar import having reference to the death of his daughters as an event certain to occur, a basis would exist for the contention of the appellants, as the above words italicized would clearly indicate that the deaths referred to were not a contingency but a certainty and that the testator was providing for the disposition of the estates of Julia and Agnes upon their deaths sub-

sequent to the death of the testator. Not so, however, as we have shown under the language used in Clause Six. To so construe said clause would in the face of unequivocal words to the contrary result in the creation of life estates in Julia and Agnes by implication. It will be found upon a review of the cases that wherever primary beneficiaries have been declared to be life tenants by implication the wills under review clearly and unequivocally authorized a declaration to that effect upon the death of the principal beneficiaries. [Coleman v. Haworth (Mo.), 8 S. W. (2d) 931, 934; Armor v. Frey, 226 Mo. 646; Burnet v. Burnet, 244 Mo. 491, 498; Walton v. Drumtra, 152 Mo. 489, 507.].

Expressed in different language it may be said that the fact of a precedent estate will not defer the vesting of a remainder in the survivors upon the death of a testator, where, as at bar, there is nothing in the context of the will to indicate such an intention. The words of postponement in such a case will be presumed to refer to the beginning of the enjoyment of possession rather than to the vesting of the remainder in the beneficiaries. Those in existence at the death of the testator will take a vested interest; and the interest once having vested will not be divested unless such intent clearly appears from the will. [2 Alexander on Wills, p. 1312, sec. 895 and cases cited under note 8.]

In view of what we have said the burdening of this opinion with excerpts from the numerous rulings of our own court confirmatory of the correctness of the rule above announced, is neither wise nor necessary. Prolix statements of facts and copious quotations from other cases lend no force to legal conclusions, and not only merit but receive the condemnation of a busy bench and an industrious bar. The curious will find ample approval of the rule stated in the following Missouri cases: Ewart v. Dalby, 5 S. W. (2d) 429; Northcutt v. McAllister, 297 Mo. 475, 249 S. W. 398; Owens v. Men and Millions Movement, 246 S. W. l. c. 174; Huntington R. E. Co. v. Megaree, 280 Mo. l. c. 50; Howard v. Howard, 184 S. W. l. c. 994; Dameron v. Lanyon, 138 S. W. l. c. 3; Middleton v. Dudding, 183 S. W. l. c. 444.

V. Nor is it deemed necessary to sustain the correctness of our conclusion relative to the testator's meaning and purpose of Clauses Three, Five and Six by the discussion of same under the well recognized doctrine that the vesting of estates immediately upon a testator's death is always favored, unless a contrary intention is clearly manifested in the will. We have demonstrated that no such intention is implied or indicated in the instant case.

656

VI. A source of contention is sought to be found in the language employed by the testator in the latter part of Clause Six to this effect: "My intention is that in the meaning and construction of this will the question of vested or contingent remainders shall never arise or in any manner be considered." It is contended by appellants that the word "remainders" as used in the above quotation, shows that the testator intended to give his daughters but life estates. Considering the will as a whole, with more particular reference to Clauses Three, Five and Six, we are not impressed with the soundness of the interpretation given to the word "remainders" by the appellants.. If the testator intended to create life estates in Julia and Agnes no testamentary declaration could have prevented the creation of either vested or contingent remainders. That he was aware of this fact is reasonably certain because the record discloses that his will was drawn by a lawyer of probity, ability and learning, who in the proper discharge of his duty would have informed the testator of the futility of his declaration. It is far more reasonable, therefore, to interpret the word "remainders" as intended to give emphasis to the words used in Clauses Three and Five, creative of the estates in fee simple of Julia and Agnes. Thus interpreted, while not essential to the creation of these estates, it is not futile in that it adds to the affirmative character of the words of creation and thus more clearly demonstrates the intention of the testator.

For the reasons stated we hold that Julia A. Hinton and Agnes Stearns, now Hoover, were, under the will of the testator, given fee simple estates in the lands respectively devised to them; that having survived the testator the estates vested in them absolutely; that the plaintiff-respondent succeeded by proper deeds of conveyance to their rights and whatever rights Anna B. Stearns, the widow of the testator, had under the will in the real estate in question; and that the plaintiff-respondent under said deeds is the absolute owner of said real estate; and that the trust deed securing the note held by the respondent, the Metropolitan Life Insurance Company, constitutes a first lien upon said real estate.

The judgment and decree of the trial court is, therefore, affirmed. All concur.