Anna Hirschowitz FRIEDMAN and E. Harriett Surasky, Appellants,

v.

Franklin MARSHALL, Administrator ad litem of the Estate of Philip D. Hirschowitz, deceased; Jane Menz; Gilda Whitaker; and Louie Hirschowitz, Respondents.

No. 18964.

Missouri Court of Appeals,
Southern District,
Division Two.

April 7, 1994.

Application for Rehearing or Transfer to Supreme Court Denied April 25, 1994.

Application to Transfer Denied
June 21, 1994.

David Potashnick, Sikeston, for appellants.

James M. Hux, Hux & Hux, Sikeston, for respondents Menz and Whitaker.

Francis J. Siebert, Scott City, for respondent Louie Hirschowitz.

Franklin Marshall, Sikeston, Administrator ad litem of the Estate of Philip D. Hirschowitz.

CROW, Judge.

This is a will construction case.

Max Hirschowitz ("Max"[1]) signed his last will and testament in 1948. At that time, he had a wife, Mary Hirschowitz ("Mary"), and four children: Philip Hirschowitz ("Philip"), Abram Hirschowitz ("Abie"[2]), Louie Hirschowitz ("Louie"), and Anna Friedman ("Anna").

The will contained several devises of real estate. One was Article Third, which devised a parcel ("the subject tract") to Philip.

Article Fifteenth of the will provided:

"It is my will and I direct that in the event any of my heirs die without issue the real estate hereinabove bequeathed unto either of such children shall revert to and become the property of my estate for equal

distribution among the surviving heirs, including my beloved wife, Mary Hirschowitz, who shall share an equal portion."

Max died in 1950, survived by Mary and his four children. His will was probated.

Mary died in 1983.

Philip signed his last will and testament in 1989. In it, he devised the subject tract to his wife, Margaret L. Hirschowitz ("Margaret"), for life, with the remainder in fee to:

"... my niece, Jane Menz, a fifty percent (50%) share, and my niece, Gilda Whitacre, a fifty percent (50%) share, absolutely."

Jane and Gilda[3] are children of Abie.

Philip died in 1991. He was not survived by Margaret[4] or by issue. His will was admitted to probate.

This suit was filed by Anna, seeking a determination of whether ownership of the subject tract passed to (a) Philip's devisees, Jane and Gilda, per his will, or (b) Max's "surviving heirs" per Article Fifteenth of Max's will because Philip died without issue.

Abie died in 1992, while this suit was pending in the trial court. He was survived by his two daughters, Jane and Gilda (Philip's devisees).

At some point in the trial court, Anna's only child, Ettie Harriett Friedman Surasky ("Ettie"), became a party.

Louie, named in Philip's will as personal representative of Philip's estate, filed an answer in that capacity. The answer pled that Max's will devised the subject tract to Philip in fee simple absolute, hence ownership passed to Jane and Gilda per Philip's will, subject to the necessity of having to sell the tract to pay Philip's debts.

---

1. Because of the many family members mentioned in this opinion, it is essential that we refer to each in a manner that avoids confusion. Accordingly, once each is introduced, we shall thereafter refer to him or her by his or her respective forename. We mean no disrespect.

2. It appears his forename is Abram, but he is named in the will as Abie.

3. Gilda's surname is spelled "Whitacre" in Philip's will and "Whitaker" in Gilda's answer. It appears from the record that all parties agree "Gilda Whitacre" and "Gilda Whitaker" are the same person.

4. The record does not reveal when Margaret died. The pleadings that mention her death aver only that she predeceased Philip.

Louie, in his individual capacity, filed an answer asserting the same theory. So did Jane and Gilda.

Anna and Ettie moved for summary judgment, averring that by reason of Article Fifteenth of Max's will, the subject tract reverted to, and became part of, Max's "estate" when Philip died without issue. Consequently, pled Anna and Ettie, the subject tract should be distributed "to the remaining surviving residual legatees" pursuant to Article Ninth of Max's will, which provided:

"All the rest, residue and remainder of my property, both real, personal and mixed, ... I give, devise and bequeath ... as follows:

A one-fifth share to my wife, Mary Hirschowitz;

A one-fifth share to my son Louie Hirschowitz;

A one-fifth share to my son Philip Hirschowitz;

A one-fifth share to my son Abie Hirschowitz;

A one-fifth share to my daughter, Anna Friedman."

At some point in the trial court, Franklin Marshall ("Marshall"), a lawyer, was appointed Administrator ad litem of Philip's estate. Apparently, that was because Louie, the personal representative named in Philip's will, was a party to this suit in his individual capacity and, as we have seen, asserted a theory contrary to that of Anna and Ettie.

Marshall, Jane, Gilda and Louie (individually) moved for summary judgment. Those parties, henceforth referred to as "Respondents," asserted Max's intent in Article Fifteenth of his will was that it apply to only an heir who (a) predeceased him, and (b) died without issue. Therefore, pled Respondents, inasmuch as all of the devisees in Max's will survived him, all of the devises were "absolute devises in fee simple."

The trial court found there were no genuine issues of material fact and that Respondents were entitled to summary judgment as a matter of law. The judgment states, *inter alia:*

"10. That the devises contained in ... the Last Will and Testament of Max Hir-schowitz, deceased, were absolute devises in fee.

11. That the devise over in the event of the death of the primary devisees without issue contained in Article Fifteenth of the Last Will and Testament of Max Hirschowitz refers only to the death of any of the primary devisees prior to the death of the testator. Since each of the primary devisees survived the testator, Max Hirschowitz, said devises became absolute devises in fee simple."

■ Anna and Ettie, henceforth referred to as "Appellants," bring this appeal. The first of their four points relied on reads:

"The trial court erred in overruling Appellants' motion for summary judgment and sustaining Respondents' motion for summary judgment, because its ruling was against the weight of the evidence, in that the weight of the evidence was that the intent of Max Hirschowitz was to cause lands he bequeathed by his will to revert to his estate for distribution among his surviving heirs if any of his sons died without issue after receiving bequests from the Estate of Max Hirschowitz."

Appellants point out that when Max signed his will in 1948, Anna already had issue— Ettie. By Article Sixth, Max devised a parcel of real estate to:

"... my daughter, Anna Friedman, and granddaughter, Ettie Friedman, as joint tenants with right of survivorship."

Appellants assert all three of Max's sons were childless when Max signed his will; however, Appellants fail to identify anyplace where the record demonstrates this.

The record does establish that Louie, the youngest of Max's children, was 32 when Max died. Louie, like Philip, has no off-spring. As reported earlier, Abie, now deceased, was survived by two daughters, Jane and Gilda. Their respective dates of birth are not in the record.

■ In construing a will, courts must gather the testator's intention from the words used in the will, and give effect to such intention unless it conflicts with some positive rule of law. *Carter v. Boone County*

*Trust Co.*, 338 Mo. 629, 92 S.W.2d 647, 651[1, 2] (banc 1935). Courts must take the will as a whole in arriving at such intention and not give any clause undue preference. *Id.* at [3]. Where a will has a provision such as "should any of my devisees die without issue living," and there is doubt or uncertainty as to whether the testator meant the death of the devisee before the death of the testator, the will is to be construed as meaning the death of the devisee before the death of the testator. *Id.* at 653[11]. This is a rule of construction based on the theory that the law favors the vesting of estates at the earliest possible time. *Id.* at [12].

■ An ambiguity in a will is patent if it is apparent to a person who reads the entire will with care. *Helmer v. Voss*, 646 S.W.2d 738, 741[3] (Mo. banc 1983). Where an ambiguity is patent, it is appropriate to resort to outside evidence of surrounding circumstances to identify the beneficiaries, to explain their relationship to the testator, or to show the nature and extent of the testator's holdings. *Id.* Once such explanatory material has been considered, a court must look primarily to the language of the will. *Id.*

In applying the principles set forth in the two preceding paragraphs, we are mindful that this case reaches us on appeal from a summary judgment.

■ We learn from *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993), that a party moving for summary judgment bears the burden of establishing a right to judgment as a matter of law on the record submitted. *Id.* at 382[19]. Any evidence in the record presenting a genuine dispute as to the material facts defeats the moving party's prima facie showing. *Id.*

Here, we find no dispute in the record or the parties' briefs about any fact pertinent to the determination of Max's testamentary intent. That is, all parties appear to agree on all facts material to that determination.[5]

Consequently, this case was appropriate for adjudication by summary judgment.

Appellants rely on several provisions in Max's will to support their first point.

Appellants emphasize that Article Fifteenth, quoted *supra*, provides that if any of Max's heirs die without issue, the real estate devised to such child shall "revert to and become the property of my estate for equal distribution among the surviving heirs...." Appellants maintain the verb "revert" demonstrates Max intended the "die without issue" condition to apply after his death. Appellants argue:

> "[L]and cannot revert to an estate unless the testator has died, an estate has been created, lands ... distributed therefrom, and then a condition [occurs] which triggers the return of such property to the estate."

Appellants cite *Thomas v. Higginbotham*, 318 S.W.2d 234, 237[3] (Mo.1958), which holds that a testator is presumed to have intended the legal effect of language used in his will. This is on the theory that the testator is presumed to know the law. *Id.* Therefore, say Appellants, we must presume Max knew the meaning of "revert" when he used it in Article Fifteenth.

In *Keller v. Keller*, 338 Mo. 731, 92 S.W.2d 157 (1936), cited by Appellants, John G. Keller owned real estate in fee. He and his wife deeded it to his son, George J. Keller, using the customary words of grant. However, the deed went on to provide that if the grantee, George J. Keller, "should die without children the ... real estate shall revert to his father and his heirs and that the said George J. Keller shall not sell or dispose of said real estate without first obtaining the consent of the party of the first part...." 92 S.W.2d at 158.

The father died the year after the conveyance. The son died 41 years after the father, without children. The Supreme Court held the deed expressed, in apt words, a reversion

---

5. As noted *supra*, Appellants' brief asserts all three of Max's sons were childless when Max signed his will. The record supports a finding that Philip and Louie were then childless and remained so. However, the record is silent as to whether Abie's two daughters were born before or after Max signed his will. Hence, there is no "dispute" about the matter. It is simply a subject about which neither side presented proof in the trial court.

to the father and his heirs. *Id.* at 160. The opinion continued:

> "We, therefore, hold that the deed . . . passed only a base or qualified fee, determinable upon the death of said George J. Keller, subject, so far as material here, to defeasance in the event of the death of said George J. Keller without children, with the reversion in the said John G. Keller and his heirs, and upon the death of said George J. Keller without children said real estate reverted to the heirs of said John G. Keller."

*Id.* at 161.

Next, Appellants remind us that by Article Sixth, Max devised a parcel of real estate to Anna and her daughter, Ettie, as joint tenants with right of survivorship. This, say Appellants, manifests an intent by Max to keep ownership of his property "in his blood line as long as legally possible."

Another significant provision, according to Appellants, is Article Fourteenth. Before considering it, other provisions of Max's will must be noted.

Article Third, as reported *supra*, devised the subject tract to Philip. Article Third described the tract as the east half of the southwest quarter of a designated section, township and range, except one acre and an eight-foot strip along part of one side. We infer from this that the subject tract was rural land. Articles Fourth and Fifth of Max's will devised similarly described tracts to Abie and Louie, respectively.

Article Twelfth of Max's will provided:

> "I will and direct that so long as my beloved wife, Mary Hirschowitz, shall live she shall participate to the extent of one-fifth (⅕) of the net income annually from each of the farms I have hereby bequeathed to or entailed to my children."

Article Thirteenth of Max's will provided:

> "In this connection I further direct that a full accounting shall be made annually on or before January 15th of each calendar year following my demise."

Article Fourteenth of Max's will provided:

> "I direct that in the event either of my sons fail, neglect or refuse to cultivate and operate the agricultural lands willed to them individually for a period of three (3) successive years or to make a full, fair and honest accounting of the proceeds from said lands for a like period the bequeathe [sic] to such child so failing shall be cancelled by the Probate Court or the Circuit Court of Scott County, Missouri, and such gift be declared null and void and the fee simple title to any such real estate involved shall immediately thereafter vest in my estate to be equally distributed among the remaining heirs except the heir whose bequeathe [sic] has been nullified as in this article provided."

Appellants insist Article Fourteenth demonstrates Max intended "to limit his sons' bequests and to cut these bequests off in the event certain conditions arose." According to Appellants, Articles Fourteenth and Fifteenth are consistent in that each manifests an intent that the devises to the sons "were not intended to be absolute."

Appellants also call our attention to Article Sixteenth of Max's will which devises a lot in Oran, Missouri, to:

> ". . . my daughter, Anna Friedman, and unto her heirs."

Appellants contrast this with the devises to the three sons, where the word "heirs" does not appear. Appellants insist the devise in Article Sixteenth denotes "the absoluteness of this gift."

Finally, Appellants emphasize Max's will appointed Louie as executor with no provision for a replacement executor should Louie predecease Max. According to Appellants, this shows Max did not contemplate Louie would predecease him. Appellants cite *Estate of Carter v. Carter*, 404 S.W.2d 693, 698 (Mo.1966), which says:

> "Another indication that testator did not contemplate that his daughter would predecease him is the fact that he appointed her executrix without making any substitutional provision in case of her prior death."

Three briefs have been filed in response to Appellants' brief: one by Jane and Gilda, one by Louie, and one by Marshall. Marshall's brief adopts the brief of Jane and Gilda. Many of the cases cited by Jane and Gilda

are cited by Louie. All Respondents urge us to affirm the judgment.

Respondents cite *Owens v. Men and Millions Movement*, 296 Mo. 110, 246 S.W. 172 (1922). There, a testator devised the residue of his estate to his daughter and son-in-law, jointly. Another provision stated that in case both of those devisees died, the residue would go to the testator's granddaughter. A third provision stated that if the daughter, son-in-law, and granddaughter "should all die without leaving any issue," the residue would go to others. The daughter, son-in-law, and granddaughter all survived the testator. The Supreme Court held:

> "If 'die without leaving any issue,' as used in the [will] means dying within the lifetime of the testator, then the contingency never happened, and never can happen, and their title is absolute. On the contrary, if 'die without leaving any issue' refers to a time subsequent to the death of the testator, then the [will gives the daughter and son-in-law] merely a defeasible fee. Their estate would terminate upon their dying without issue. Whether, therefore, they take the fee subject to an executory devise, or whether they take absolutely, depends upon the construction adopted with respect to the words, 'die without leaving any issue.'"

246 S.W. at 174.

The opinion stated that the great weight of authority supports the rule that when real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. *Id.* The intention of the testator is presumed to be to prevent a lapse. *Id.* However, that rule, like all other subordinate aids to construction, must give way to the primary rule that the intent of the testator is to be gathered from the four corners of the instrument, giving effect if possible to all its language. *Id.* at [2]. Accordingly, if there are expressions in the will which indicate the testator referred to death subsequent to his own, they

must be given effect. *Id.* Finding no such intent in the will, the Supreme Court held the daughter and son-in-law owned an estate in fee simple.

In *Ewart v. Dalby*, 319 Mo. 108, 5 S.W.2d 428 (1928), another case cited by Respondents, a testator devised his estate to his wife for life, and at her death:

> "... to my daughter ..., and if she dies single and unmarried and without issue, to my brother...."

5 S.W.2d at 429.

The testator died in August, 1857; his wife died the following month. His daughter died in 1861, single and without issue. The Supreme Court stated that if the words "if she dies single and unmarried and without issue" referred to the time of the death of the daughter, then she took a "qualified or defeasible fee in the devised property, subject to being divested or terminated upon, and at the time of, the death of the daughter, single and unmarried and without issue." However, if such words referred either to death of the daughter occurring before the death of the testator or before the death of the life tenant, then, because the daughter survived them both, the contingency upon which the daughter's estate was to terminate never occurred, hence she became vested with an "absolute and indefeasible estate in fee simple." 5 S.W.2d at 431–32. The opinion continued:

> "The law favors vested estates, and one of the recognized rules of construction is that an estate will be held to vest at the earliest possible moment of time, which ordinarily is immediately upon the testator's death, unless a clear and certain intention to the contrary is manifested in the will. Therefore, it has been recently ruled a number of times by this court that, where a devise is made to a beneficiary with a limitation over to another beneficiary contingent solely upon the death of the first-named devisee, uncoupled with any other event or contingency, the will must be construed to refer to death of the first-named devisee occurring during the lifetime of the testator, unless the language of

the will clearly indicates a contrary intention."

5 S.W.2d at 432[5] (citations omitted).

Finding nothing in the will clearly indicating what the testator intended, the Supreme Court held the daughter, upon the death of the life tenant, became vested with an absolute and indefeasible estate in fee simple in the devised property. *Id.* at 436.

In *Stevenson v. Stearns*, 325 Mo. 646, 29 S.W.2d 116 (1929), also cited by Respondents, a testator devised tracts of land to each of his two daughters. Those devises were followed by Clause Six, which provided:

"In the event of the death of my said daughters or any of them, leaving child or children of any lawful marriage or descendants of such child or children living at the time of the death of the daughter, then in that event the lands and estate herein given to them respectively, so dying, shall pass to and vest in fee in such child or children, or the descendants of such child or children then living; but should any of my daughters die, leaving no child or children or descendants of a child or children then living, the estate herein given to them respectively shall pass to and vest in my surviving children or their descendants then living, share and share alike...."

29 S.W.2d at 117.

The Supreme Court held the devises to the daughters were sufficient to create an estate in fee unless Clause Six compelled a different result. Citing *Owens*, 246 S.W. 172, and *Ewart*, 5 S.W.2d 428, the Supreme Court said in *Stevenson:*

"[T]his court has frequently held that, when real estate is devised in terms clearly indicative of an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in the event of the death of a primary devisee, has reference to such death during the life of the testator, whereupon the primary devisee, in the absence of unambiguous words to the contrary, will take an absolute estate in fee simple in the land devised."

29 S.W.2d at 118.

Finding no clear and decisive words indicative of a contrary intent, the Supreme Court

held the daughters, having survived the testator, owned their respective tracts in fee simple. *Id.* at 119.

A similar result occurred in *Palmer v. French*, 326 Mo. 710, 32 S.W.2d 591 (1930), cited by Respondents. The opinion said:

"Courts refuse to cut down, limit, or qualify, by construction, an estate already granted in fee or absolutely, unless the supposed terms of limitation alleged to exist in some subsequent portion of a will are as clear, unmistakable, and certain as those which devised the fee, and the meaning and intention of the testator to so limit the estate granted is thereby indicated with reasonable certainty.

. . . .

It is not to be assumed that a rational person will deliberately and intentionally devise property absolutely and without qualification or limitation as did the testator in this will and then contradict himself by the imposition thereafter of a limitation, and such a conclusion is not, we think, permissible, unless the alleged limiting language is susceptible of no other meaning."

32 S.W.2d at 593–94.

Our effort to ascertain what Max intended in Article Fifteenth begins by noting that Article Third, by which he devised the subject tract to Philip, began:

"I give, devise and bequeath to my son...."

Articles Fourth and Fifth, by which Max devised real estate to Abie and Louie, respectively, began the same way. Indeed, Article Sixth, by which Max devised real estate to Anna and Ettie as joint tenants with right of survivorship, began:

"I give, devise and bequeath to...."

■ The words "give, devise and bequeath," standing alone, vest a devisee with fee simple title to any land thereby devised. *Lehmann v. Griffin*, 224 Mo.App. 657, 31 S.W.2d 271, 273[4] (1930). Although the term "heirs" does not appear in Articles Third, Fourth or Fifth, that is not necessary to convey an estate in fee simple, *Ewing v. Shannahan*, 113 Mo. 188, 20 S.W. 1065,

1066[1] (1892), unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant. § 442.-460, RSMo 1986. No such intent appears in Articles Third, Fourth or Fifth. If those grants are limited, it is by reason of Article Fifteenth, later in the will.

 *Keller*, 92 S.W.2d 157, cited by Appellants, is of no help in determining what Max intended in Article Fifteenth. In *Keller*, the "die without children" clause pertained to a grantee in a deed, not a devisee in a will. As a general rule, a deed takes effect from the date of its delivery, *Sando v. Phillips*, 319 S.W.2d 648, 652 (Mo.1959), and passes a present estate or interest, *Thorp v. Daniel*, 339 Mo. 763, 99 S.W.2d 42, 44[1] (1936). A will, however, does not take effect until the testator's death. *Crampton v. Osborn*, 356 Mo. 125, 201 S.W.2d 336, 342 (1947). Consequently, *Keller* did not present the question of whether the "die without children" clause meant death of the grantee without children before the death of the grantor or afterward.

A second difference between *Keller* and the instant case is that in *Keller* the "die without children" clause pertained to a lone grantee. Here, Article Fifteenth pertains to all of Max's children and, as demonstrated below, creates a complex scheme of distribution if Appellants' position prevails.

If Max's intent in Article Fifteenth was as hypothesized by Appellants, there would be an "equal distribution" of the subject tract to Max's "surviving heirs." When Philip died, Max's surviving heirs were Abie, Louie and Anna. Presumably, under this scenario, each became vested with a one-third interest in the subject tract upon Philip's death.

However, were those interests (a) fee simple, or (b) subject to divestiture if the recipient dies without issue? Under possibility "(a)," Abie, Louie and Anna could alienate their respective one-third interests in the subject tract. However, under possibility "(b)," Louie's interest in the subject tract would be divested upon his death if he continues to lack issue.

Furthermore, if Max's intent in Article Fifteenth was as hypothesized by Appellants, and Louie dies without issue, the land devised to him by Max in Article Fifth must be equally distributed to Max's "surviving heirs" upon Louie's death. Inasmuch as Abie has now died, this would mean that Anna (if she survives Louie) receives the entire interest in the land devised to Louie by Max.

Under possibility "(a)" and the facts posed by the preceding paragraph, Louie ends up with an estate in fee in one-third of the subject tract devised to Philip by Max, but no interest whatever in the land devised to him (Louie) by Max. Under possibility "(b)" and the facts posed by the preceding paragraph, the one-third interest Louie received in the subject tract on Philip's death would be divested from Louie (if he dies without issue) and go to Max's "surviving heirs," of which only Anna would be left.

We find no language in Max's will establishing that the distribution of his land as set forth in the four paragraphs above was his "clear and certain intention" as required by *Ewart*, 5 S.W.2d at 432[5]. Nor is such an intention shown by language "susceptible of no other meaning," as required by *Palmer*, 32 S.W.2d at 593–94.

 Furthermore, acceptance of Appellants' construction of Article Fifteenth would create an irreconcilable conflict between it and the devises in Articles Third, Fourth and Fifth, which ostensibly devise fee simple interests to the respective devisees. One or the other of two apparently inconsistent provisions in a will should not be stricken down if both are reconcilable with the general intention of the testator as determined from the language of the four corners of the will. *Lang v. Taussig*, 180 S.W.2d 698, 702[8] (Mo. 1944). Articles Third, Fourth, Fifth and Fifteenth can be reconciled so none need be stricken down. This requires only that the "die without issue" proviso in Article Fifteenth be construed to mean that it applies to only a devisee who dies without issue before Max's death.

 Consequently, we hold that Article Fifteenth of Max's will must be construed per *Owens* and its progeny. That is, when real estate is devised in terms denoting an intention that the primary devisee shall take

a fee on the death of the testator, coupled with a devise over in case of the devisee's death without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. 246 S.W. at 174.

The trial court held the devises in Articles Third, Fourth, Fifth and Sixth of Max's will were absolute·devises in fee.[6] The trial court was correct. Appellant's first point is without merit.

Appellants' second and third points present essentially the same contentions as their first point. We deny the second and third points for the same reasons we denied the first.

■ Appellants' final point avers the trial court erred in failing to "equitably apportion" the attorneys' fees associated with this "declaratory judgment action." Appellants maintain the action was designed to give guidance and direction to the administration of Philip's estate and Max's other heirs.

Attorney fees are mentioned in the prayer of Anna's petition which requests, among other things, that the trial court "equitably apportion attorney's fees and expenses among the surviving heirs of Max Hirschowitz, if in fact the surviving heirs of Max Hirschowitz are found to be the legal owners of the property in question."

Inasmuch as the trial court did not find that ownership of the subject tract vested in "the surviving heirs of Max Hirschowitz" upon Philip's death, the condition upon which Anna based the attorney fee prayer never occurred.

Furthermore, we learn from *In re Estate of Murray,* 682 S.W.2d 857, 858 (Mo.App. W.D.1984), that:

> "While there is scant authority, Missouri seems to follow the rule that expenses incurred by a beneficiary of an estate, rather than the personal representative, must be shown to be beneficial to the estate as a whole rather than to just individuals interested therein."

In *Murray,* an heir was successful in obtaining removal of an estate's personal representative. The Western District held:

> "[W]here a beneficiary of an estate is seeking an allowance for attorney fees from the estate based upon an action for an accounting from and removal of a personal representative, there should exist the requirement that not only must the action have been successful, but that the result is beneficial to the estate."

*Id.* at 858–59.

Here, Appellants' motion for summary judgment sought a declaration that the subject tract was not part of Philip's estate, but "should revert to and become once again the property of the estate of Max Hirschowitz due to the fact that Philip ... died without issue."

There is no showing that Appellants are beneficiaries of Philip's estate. There is likewise no showing that Appellants are fiduciaries seeking guidance in administering Philip's estate. *See: Frey v. Huffstutler,* 748 S.W.2d 59, 65–66 (Mo.App.S.D.1988). Additionally, their effort to show Philip did not own the subject tract in fee simple when he died has been unsuccessful. Furthermore, there is no showing as to the amount of assets in Philip's estate. The record contains only an averment regarding the "necessity" of having to sell the subject tract to pay Philip's debts.

For the above reasons, we hold the trial court did not err in failing to award attorney fees.

Judgment affirmed.

PREWITT and GARRISON, JJ., concur.

---

**6.** Louie, by a counterclaim, placed in issue the devises in Articles Fourth, Fifth and Sixth of Max's will.