(No. 32448.—

IN THE MATTER OF THE ESTATE OF FRANK A. TRAGER.—
(A. W. WHEELER *et al.*, Appellees, *vs.* GEORGE AN-
DREWS *et al.*, Appellants.)

*Opinion filed November 20, 1952.*

BULL, YOST & LUDENS, of Morrison, for appellants.

SHELDON, BROWN & HAGLUND, of Sterling, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal to this court from an order of the circuit court of Whiteside County admitting to probate the last will and testament and codicil of Frank A. Trager. The petition for the probate of the will and codicil discloses that both personal and real property is devised, and that, therefore, a freehold being involved, an appeal lies to this court.

Frank Trager, the testator, and his wife, Lura B. Trager, lived at Sterling, Illinois. While living they were engaged in the plumbing business, he being the master plumber therein, and she the general manager thereof. Each possessed separate properties of a somewhat extensive nature, both personal and real. They had no children, but a large number of collateral relatives.

Frank Trager, on July 23, 1923, executed his will by the terms of which he devised all of his property, both real and personal, to his wife, Lura B. Trager. Frank Trager also on some unspecified date executed a codicil wherein he bequeathed and devised to the collateral relatives of his wife and of himself all his property and that of his wife, both real and personal, specifying that *his* property should go to *his* collateral relatives and that of *his* *wife* to *her* collateral relatives, the only exception being that the employees of the business were to receive the business, and the church a bequest of one thousand dollars.

No bequest or devise of any property is made to his wife, nor is her name mentioned therein.

The extrinsic evidence which the court permitted to be introduced at the probate proceedings shows that Lura B. Trager also on July 23, 1923, executed her will wherein she bequeathed and devised to Frank Trager, her husband, all of her property to be his absolute property forever. She also, like her husband, on an unspecified date, executed in exactly the same language a codicil, wherein she bequeathed and devised all of her property and also that of her husband to his and her collateral kindred, and, like the husband, specified that her husband's property was to go to his collateral kindred, and her property to her collateral kindred, with the exception that certain employees were to receive the business and the church a bequest of one thousand dollars. This codicil made no bequest or devise to Frank Trager, nor was his name mentioned therein.

The extrinsic evidence introduced also shows that Lura B. Trager died on December 12, 1947. Her will was admitted to probate on February 9, 1948, and Frank A. Trager was appointed executor under the terms thereof. The aforementioned codicil executed by her was not offered for probate. Frank Trager, her surviving husband, was bequeathed and devised all of the property of Lura B. Trager.

Frank Trager, the testator here, died on September 2, 1951, nearly four years after the death of his wife, Lura B. Trager. His will and the codicil here in question were found at his death in a semifireproof filing cabinet in a little room that Frank Trager used as an office, located off the dining room. The will and codicil were in a manila envelope, including the instruments purporting to be a similar codicil signed by his wife. Also therein was a notice of probate of the Lura B. Trager will in the clerk's envelope addressed to Frank Trager.

The appellants in this case contend that the codicil in question is conditional and contingent, first, because the language used in the codicil, bequeathing and devising the property, when given its ordinary plain meaning, shows the intention to make it so; second, because the paragraph designated as "First" contains these words, "Buy 2 of the best Crypts in the Sterling Valley Mausoleum in which to place our remains," which, properly construed, means that the intention of the testator was that said codicil was to become operative only when both the husband and wife had died in accordance with the manner set forth in the codicil; third, because the codicil provided that one L. P. McMillan was to be the executor thereof and he had died in the year 1931, almost twenty years before the death of Frank Trager, and the failure of Frank Trager during his lifetime to name a successor indicates that Frank Trager regarded the codicil of no force and effect at the time of his death; fourth, because a number of legatees and devisees apparently had died before Frank Trager and he had made no attempt to correct the codicil, thus permitting some of said bequests and devises to lapse; and finally, fifth, because the codicil bears no date, and it is impossible to determine whether the same was executed before or after the execution of the Frank Trager will, and it is inconsistent with the provisions of said will and therefore void.

There is little or no disagreement of counsel as to the rules applicable to cases involving the construction of wills. They disagree only as to application of the same as to the codicil here in question.

The underlying and cardinal principle in the construction of the codicil is, of course, to ascertain the intention of the testator as expressed in the codicil. (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447; *Peck* v. *Drennan,* 411 Ill. 31.) The intention of the testator should be gathered from the four corners of the will. (*Dalton* v. *Eash,*

411 Ill. 296; *Halderman* v. *Halderman,* 342 Ill. 550.) The law also is well settled that the intention of the testator must be ascertained from a consideration of the entire codicil and such construction adopted, if possible, as will uphold and give effect to all the language used by the testator. (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447.) There is a presumption against intestacy, and the court will adopt any reasonable construction to avoid a conclusion of intestacy. *Suiter* v. *Suiter,* 323 Ill. 519.

The leading case in Illinois on conditional and contingent wills is *Barber* v. *Barber,* 368 Ill. 215. Therein we find the following language, "To render a will conditional or contingent its language must clearly show that it was the intention of the testator to make a will which would operate only during a certain period or until an emergency has passed." (*Likefield* v. *Likefield,* 82 Ky. 589; *Forquer's Estate,* 216 Pa. St. 331, 66 Atl. 92.) This court in said case also declared, "A will is not conditional, however, if the contingency expressed in the instrument is referred to merely as the inducement, by way of narrative, for making the will, at the time it is made." 68 Corpus Juris, Wills, sec. 256; 1 Schouler on Wills, Executors and Administrators, (5th ed.) sec. 285; *Forquer's Estate,* 216 Pa. St. 331, 66 Atl. 92; *Walker* v. *Hibbard,* 185 Ky. 795, 215 S.W. 800, 11 A.L.R. 832.

The court below, in construing the codicil in question, over the objection of the appellants admitted certain extrinsic evidence. The rule concerning the admission of such testimony is set forth in the *Barber case* and is that parol evidence is inadmissible to show that an instrument, which in form is a general or absolute will, was intended to take effect only upon a contingency, citing *In re Will of Tinsley,* 187 Iowa, 23, 174 N.W. 4, 11 A.L.R. 826. Conversely, parol evidence is admissible to show that the testator's intention was to make an absolute and not a contingent

will. (68 Corpus Juris, Wills, sec. 256.) With these rules in mind let us now consider the codicil in question.

The first contention of the appellants is that the codicil is conditional and contingent because the language used therein makes it so. In the husband's codicil we find this language, "In case my wife, Lura B. Trager, and myself should both be killed or die within a short time of each other, I wish the following disposition made of my real estate, stocks, bonds, etc."

The appellants contend that this clause is a condition limiting the effect of the instrument to the occasion of accidental death or a short time of survivorship. It is then argued that inasmuch as neither Frank Trager nor Lura Trager was killed and Frank Trager survived his wife by more than three years and eight months, they did not die within a short time of each other, and hence the codicil is rendered void.

In *Shippee* v. *Shippee*, 122 N.J.Eq. 570, 173 A.L.R. at 1255, the condition in said will was as follows: "In case my sister, Mary L. Shippee, should die simultaneously with me or shortly before or after me as the result of an acciment or otherwise." The court held that the death of the sister forty-one days after the death of the testator was not shortly after his death. In the case of *In re Searl's Estate*, 29 Wash. 2d. 230, 186 Pac. 2d 913, 173 A.L.R. 1247 (1948) the language of the will was, "However, in the event that my husband and I should meet death by accident or otherwise at the same time or approximately at the same time, then it is my desire and will that all such residue and remainder of my estate is to pass * * *." The husband died one and one-half months after his wife. The court held that the death of the husband was not approximately at the same time. In *American Trust and Safe Deposit Co.* v. *Eckhardt*, 331 Ill. 261, 162 N.E. 843 (1928) the will provided, "In the event our death should

occur simultaneously or approximately so, or in the same common accident or calamity, * * *." The court, in discussing the construction of such language, says that the words simultaneously and approximately are in their nature indefinite, that they mean nearly, about, close to, and that the death of the husband on the next day following the death of his wife was within the meaning of the will. However, we have yet to have presented to us any authorities which would warrant us in finding that the death of Frank Traeger over three years and eight months after that of his wife was within a short time after her death. It is contended by the appellants that because of the non-happening of the condition or contingency said codicil is void. If we were obliged to consider only the language quoted we would be inclined to agree with the appellants. However, the law is well settled that in construing a will the court must give consideration to the entire codicil. (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447,) and, therefore, the consideration of this quotation alone without consideration of the other parts of the codicil does not justify the finding that the codicil was contingent.

The appellants, apparently recognizing this rule, call attention to the paragraph in the codicil designated "First." The second contention of the appellants is that the language there used clearly indicates the codicil to be conditional and contingent. Paragraph "First" directs that all debts be paid. Thereafter, we find these words, "Buy 2 of the best Crypts in the Sterling Valley Mausoleum in which to place our remains."

It is contended that the testator by use of these few words in the codicil had in mind the death of the wife and husband in accordance with the condition. It contemplates that it would be effective only if both parties were deceased and that neither had survived to make burial arrangements. It may be true that the testator had in mind the situation which would exist if the condition happened,

but because language was used to take care of this emergency situation is not proof that he intended that the whole codicil would be invalid if the condition did not happen. It well may be that the thought of death by both being killed, or dying in a short time of each other was the occasion or reason for making the codicil, but this, if true, would not prove the codicil was not a final testamentary disposition to remain effective even though the contingency did not happen.

The executor named in the will was L. P. McMillan. He had predeceased the testator in 1931. The appellants contend that since the testator failed to name a successor executor before his death this is further evidence that he did not regard the codicil effective at the time of his death. This, in substance, is appellants' third proposition. The weakness of this argument is that the executor died in 1931, the wife, Lura B. Trager, in 1947, and the testator in 1951. The appellants do not maintain that failure to name a successor prior to the death of the wife made said codicil ineffective had their deaths occurred in accordance with said claimed condition. Therefore, it is not reasonable to conclude that the failure of the testator to name a successor executor, after the death of the wife and prior to his death, is any evidence that he regarded the codicil ineffective.

The fourth contention is that the testator did not regard the codicil effective because it is alleged a number of the beneficiaries had died prior to his death. The evidence discloses that the petition filed to probate the codicil does not contain the names of all of the beneficiaries of the codicil. From this the appellants conclude they must be deceased, having died since the execution of the codicil. The failure of the testator to bring the codicil up to date, the appellants assert, is an indication that the testator did not consider it valid. The evidence in this case does not disclose the date of the death of any of these beneficiaries

if in fact they are deceased, or as to whether their deaths occurred before or after the death of the wife. It well may be that the testator having prepared the codicil in conformity with the plan that he and his wife had perfected did not desire to make other provision on the death of certain beneficiaries. In our opinion this action on his part does not indicate that the codicil is conditional or contingent.

The appellants make one further or final contention, that is, there is no proof that the codicil represents the latest expression of testamentary intent, therefore, it is not entitled to probate. It is true that the codicil bears no date, makes no reference to the will, and there is no proof it was executed subsequent to the will. The appellees object to this contention raised by the appellants because, they say, it was not raised in the trial court, and the trial court had no opportunity to pass upon the question. Of course, the appellees are correct in this claim if it is true. (*Ridgely* v. *Central Pipeline Co.* 409 Ill. 46; *Bowman* v. *Pettersen*, 410 Ill. 519.) On the other hand, appellants answer the appellees by showing that the question of revocation of the codicil is raised by offering the will which contains a clause revoking any and all prior will and codicils, which did present the question of revocation as one of the points to be resolved in determining the main issue, which is as to whether the codicil is entitled to probate. We are disposed, however, to give consideration to the contention here raised by the appellants. It is admitted that the codicil bears no date, and, in order to determine the question raised, an examination of the codicil must be made. The codicil makes no reference to Lura B. Trager. However, we do find that the testator in said codicil did purport to make disposition not only of his property but also that of his wife. Therefore, it must have been prepared to fit the situation that would exist after he had inherited his wife's property. In other words, he apparently knew

of his wife's will and its provisions, because the evidence discloses it to be comparable to his own, and the codicil was prepared to be applicable, if and when the wife's property had been added to his own. Therefore, it would seem that it is reasónable to conclude that the codicil was executed subsequent to his will, and was not intended to revoke his will wherein he had disposed of all of his property to his wife. Therefore, we do not regard the provisions of the codicil as being irreconcilable to the will and the cases cited by appellants have no application in the instant case.

In the foregoing, we have given consideration to all of the contentions of the appellants in reference to the will being contingent and conditional. It is our purpose now to consider the codicil in connection with the contention of the appellees that the said codicil was a final testamentary disposition by the testator and not void by reason of the nonhappening of the contingency expressed in the codicil.

The court in its construction of the codicil admitted extrinsic evidence. The rule as stated in the *Barber case* applies here, that parol evidence is admissible to show that the testator's intention was to make an absolute will rather than a contingent one. Therefore, it was proper for the court to admit such evidence.

An examination of the provisions of this codicil discloses that, with two exceptions, Frank Trager disposed of all of his property to his collateral kindred and that of his wife to her collateral kindred. The two exceptions were that he gave the business to the employees of the business and the sum of one thousand dollars to his church. It specifically names six brothers and sisters, nine of his nephews and nieces, three employees, a church, and more than a dozen persons of undisclosed relationship.

Seventeen different classifications of the property are used in its disposition. It is clear that much time must have been taken in the preparation of the codicil. The composition of the same, the misspelling of some words, and

the use of various abbreviations, all disclose it must have been prepared by somebody, no doubt the testator, unskilled in legal expression. This, in our opinion, is further verified by the last paragraph of the codicil, which is as follows. "Although this codicil may not be properly and legally worded, it is absolutely my request, and want it carried out to the letter."

The extrinsic evidence admitted also shows that another instrument comparable to this one, signed by Lura B. Trager, the wife, was executed on the same day as the codicil here in question. It too disposed of all her property to her collateral kindred, and all of her husband's property to his collateral kindred, with the like exceptions as found in Frank Trager's codicil; the business was to go to the same employees as named in the husband's codicil, and the sum of one thousand dollars was to go to the church. The language used and the verbiage were exactly the same as used in that of the husband. The husband's codicil and the one purported to be signed by the wife followed the same plan. In it she names a dozen of her own cousins besides an aunt and it is to these persons that Frank Trager gives the property which by his codicil is identified as his wife's property. The two instruments together indicate that the husband and wife must have consulted in the preparation of them. It is difficult to believe that the only purpose of preparing them was to make a disposition which was to be effective only if both were killed, or died within a short time of each other.

The evidence shows that on the death of Frank Trager the codicil in question was found in a filing cabinet behind a sliding partition located in a room off the dining room which he used as an office. It was in a manila envelope aged in appearance. With it was an instrument purporting to be a similar codicil signed by Lura B. Trager, his wife. Also therein was a notice of probate of his wife's will in a clerk's envelope addressed to Frank A. Trager. The

postmark of January 17, 1948, at Morrison, Illinois, indicated it must have been received immediately after the death of the wife, and it was placed in the envelope containing his will and codicil. The appellants contend that the aged appearance of the envelope and the failure to make any change when some of the beneficiaries died indicates that the testator had discarded said codicil because it had become ineffective. We cannot agree with this conclusion. The *Barber case* discusses the effect of the preservation of the instrument for a considerable period of time and holds that is a circumstance to show that the testator regarded the named contingency as relating to the motive inducing the making of the will, rather than a condition to its becoming operative. Especially is this true when the said instrument is preserved until death.

If the words in reference to the contingency and condition in the codicil are to be given their literal sense, then we arrive at the incongruous conclusion that Frank Trager and his wife went to all the trouble to prepare the codicil just for the one purpose of providing for a disposition in the event that they were both killed or died within a short time of each other. Otherwise, it must be said that they preferred to die intestate. There is always a presumption against intestacy, and the court will adopt any reasonable construction to avoid a conclusion of intestacy. (*Suiter* v. *Suiter*, 323 Ill. 519.) In other words, the courts will not construe a preference for intestacy unless it clearly appears to be the intention of the testator.

Courts also do, and should, treat a statement in the codicil as an inducement for its making when the words clearly show that it was intended to be contingent. *McMerriman* v. *Schiel*, 108 Ohio St. 334, 140 N.E. 600.

In the case of *Likefield* v. *Likefield*, 82 Ky. 589, heretofore cited, the testator in his will used the language, "If any accident should happen to me that I die away from home, my wife, Julia An Likefield, shall have everything

I possess, the house and lots and the money that is due to· me, and for her to hold it as her own." The testator died at home. When this will was offered for probate, it was resisted on the ground that it was contingent, and should be effective only in the event the testator died away from home. In admitting the will to probate the court stated the rule to be that courts are not inclined to regard a will as conditional if it can be reasonably held that the maker was simply expressing his inducement to make it, however inaccurate the language may be for that purpose, if strictly construed; and unless the words clearly show an intention that it be temporary or contingent, it will be upheld. The court in distinguishing the case from other cases holding other wills to be contingent remarked that the instant will fixed no limit or time, as during a particular journey, or for a particular length of time. No specific time or particular event was named. It referred to no particular expected calamity, and the words were general in character, leading to the conclusion that the testator, evidently not an educated man or adept in writing such instruments, did not intend the disposition of his estate to depend on whether he died at or away from home.

The codicil now before us for consideration, by its language, fixes no specific time or event, and refers to no particular expected calamity. The language is general in character and does not clearly show an intention that the instrument be temporary or contingent. The detailed disposition of all property designated as his own or his wife's, evidencing a general and well-considered plan, and the care with which the instrument was preserved, all go to indicate the reverse of a temporary or contingent intent. We have previously determined that the instrument was probably written by the testator himself, and that he was not educated in the art of drafting testamentary instruments. By the final paragraph thereof he recognized his own inability in stating, "Although this codicil may not be properly and

legally worded, it is absolutely my request, and want it carried out to the letter." This sentence indicates an intention also that the disposition be an absolute one.

At the time of the drafting of this codicil, it is undoubtedly true that the testator acted with the possibility in mind that he and his wife might die at or near the same time. However, considering the elaborateness of the plan of disposition together with all of the other factors referred to above, it is evident that by the language of the codicil he merely expressed his reason for executing the instrument and did not intend to imbue it with a contingent nature. The codicil, therefore, is not conditional or contingent, but represents the final disposition of the testator's property, both that which he possessed in his lifetime as his own and that which he inherited under the terms of his wife's will. The *Barber case* sets forth the principles controlling a case of this nature. Accordingly, the order of the circuit court of Whiteside County is correct and is affirmed.

*Order affirmed.*