Catherine M. **HELMER**, et ux, et al., Respondents,

v.

Marge **VOSS**, et al., Appellants,

and

Lee James **Konz**, et al., Defendants.

No. 64454.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.
Rehearing Denied March 29, 1983.

Leland C. Bussell, Dale L. Davis, and C. Ronald Baird, Springfield, for appellants.

Rolland L. Comstock and Robert W. Stillings, Springfield, for respondents.

BLACKMAR, Judge.

John Robert Greener (John) and his wife Cecile M. Greener (Cecile) executed the same document as their will on July 11, 1961. The will was prepared by a lawyer, the effect of which preparation, rather than being helpful to us and the other courts to which the resulting problems have been presented, only makes us sigh. We set the will out in full, except for the attestation clause, with the portions giving rise to the controversy italicized.

### LAST WILL AND TESTAMENT

KNOW ALL MEN BY THESE PRESENTS that we, JOHN ROBERT GREENER and CECILE M. GREENER, husband and wife, residing in Springfield, Missouri, being of sound and disposing mind and memory, do make, publish, and declare this our last will and testament, hereby revoking and making null and void all other last wills and testaments and codicils thereto by us made heretofore.

*ITEM I:* We declare that all our just debts and funeral expenses shall first be paid from our estate.

*ITEM II:* All of our property of any kind and character is at the present time so arranged that it will pass unto the other party in the event of the death of one of the parties herein. *Therefore, the purpose of this will is to devise and bequeath the property of the parties in the event of a common disaster to both John Robert Greener and Cecile M. Greener.*

*ITEM III: In the event that by reason of a common disaster or calamity both of us should fail to survive,* then in that event from the proceeds of our insurance policies, we hereby will and bequeath unto Kathleen Konz the sum of Five Thousand Dollars ($5,000.00) and unto Louis Konz the sum of Five Thousand Dollars ($5,000.00); and it is further directed said money shall be placed in trust for said Kathleen Konz and Louis Konz in the Union National Bank of Springfield, Missouri. It is further directed that the Union National Bank of Springfield, Missouri, shall hold said money in trust until the time that each child shall start his college education, and if either Kathleen Konz or Louis Konz shall wish to go to college, said money shall be used for their further education. However, in the event either one of them does not want to go to college, at the time each child reaches the age of twenty-one (21), the trust shall terminate and said money shall be paid over to each of them.

*ITEM IV:* We further will and bequeath *in the event of a common disaster,* to C.E. Greener the sum of Twelve Hundred Dollars ($1,200.00) in cash to be taken from the estate.

*ITEM V:* We further will and bequeath *in the event of a common disaster,* the following personal effects of Cecile M. Greener to her sister, Mrs. Marge Voss of Appleton, Wisconsin, all of the jewelry,

furs, clothing, and silver owned by Cecile M. Greener at the time of her death.

*ITEM VI:* We hereby will and bequeath unto Lee James Konz the sum of One Dollar ($1.00).

*ITEM VII:* We further will and bequeath all the rest and residue of our property, real, personal, or mixed, to be divided into equal third parts and to be distributed as follows: One-third (⅓) shall go to C.E. Greener; One-third (⅓) shall go to Mrs. Marge Voss; and One-third (⅓) shall go to the Immaculate Conception Church of Springfield, Missouri.

*ITEM VIII:* We hereby appoint E.W. Collinson executor of this our last will and testament and direct that said executor shall have the power to immediately sell any real and personal property not specifically bequeathed in this will and reduce the same to cash as after the inventory is filed that said executor deems necessary.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 11th day of July, 1961.

/s/   John Robert Greener
    John Robert Greener

/s/   Cecile M. Greener
    Cecile M. Greener

C.E. Greener was John's brother. He died before either of the testators, in 1970 or 1971. Marge Voss, a sister of Cecile Greener, is still living and is one of the defendants. Lee James Konz is an adopted son of Cecile, but not of John. He survives and is also a defendant. The persons described in the will as Kathleen Konz and Louis Konz are children of Lee James Konz. They are now known as Catherine M. Helmer and Louis P. Greener and are the plaintiff-contestants. They were adopted by John and Cecile, in August of 1962, after the making of the will in issue.

Cecile died on October 10, 1979 of a heart attack. John survived only two and one-half months, dying on December 30, 1979, also of a heart attack. The deaths bore no relation to each other and were not the result of a common disaster. The record shows no attempt to offer the will for probate as the will of Cecile, and no evidence that any administration was had on her estate. If indeed the property of the testators was held in joint names, or in estate by the entireties, it is very possible that no administration on her estate was necessary. The will was admitted to probate as the will of John.

■ Catherine M. Helmer and Louis P. Greener filed a suit to contest the will as the will of John. Their spouses were later joined as plaintiffs, for unexplained reasons. The will contest is unusual in that there is no claim that the will was not executed with statutory formalities, and no issue of testamentary capacity or undue influence. The claim rather is that the will, by its very terms, was totally inoperative inasmuch as John and Cecile did not die in a common accident. There is ample authority that a claim of this kind may be raised in a will contest.[1] If the contest should be successful, the contestants would inherit John's property by showing that they are his children by adoption.[2] There is no evidence that John had any other children, natural or adopted, or that Cecile, who had been married before, had children other than her adopted son Lee James Konz.

There is no very strong evidence about the nature and extent of the property of John and Cecile in 1961. The attorney who drafted the will testified that they owned a home with some equity but probably with substantial mortgage indebtedness. He knew of no stocks or bonds. There were two life insurance policies, apparently on John's life, for $5,000 each, which are men-

---

1. *Robnett v. Ashlock,* 49 Mo. 171 (1872); *Eaton v. Brown,* 193 U.S. 411, 24 S.Ct. 487, 48 L.Ed. 730 (1904); *Bagnall v. Bagnall,* 148 Tex. 423, 225 S.W.2d 401 (Tex.1949); 79 Am.Jur.2d *Wills,* § 751 (1975).

2. The trial judge said that some of the parties disputed the validity of the adoption decree, and properly noted that no issue of its validity was before him. Nor is the issue before us. This case involves only the existence of a will, and not distribution.

tioned in Item III. The inventory value of John's estate was approximately $94,000. The record is silent as to how his assets were acquired, as to the portion acquired after 1961, and as to whether all substantial assets had been held jointly with Cecile. The attorney who drew the will testified that, in 1961, "both had good jobs" and appeared to live well, and it may be inferred that they expected to add to their total assets.

At a bench trial the defendants, proponents of the will, sought to introduce other evidence which they felt was probative of the intention of John and Cecile that the will remain operative as to the property of the survivor after the unrelated death of the other. Most of this evidence was received over the objection of counsel for the contestants, who have consistently claimed that the will is unambiguous and that extrinsic evidence is not admissible as an aid to construction. The trial judge prepared an extensive Memorandum Opinion in support of his decision, concluding that the will was intended to have effect only in the event that John and Cecile should die in a common disaster, and that, since this did not occur, it was totally ineffective for any purpose. He first analyzed the case without considering the evidence to which objection had been made, and then did so on the basis of all evidence offered, reaching the same result in both instances. We have found his Memorandum Opinion helpful and commend his method for complicated or unusual cases.[3] We, however, do not agree with his disposition of the case, as a matter of law.

The Missouri Court of Appeals, by 2 to 1 vote, reversed the judgment of the trial court. We transferred the case on motion. We make extensive use of Judge Flanigan's research and at times of his phraseology, as set forth in his majority opinion.

The contestants, to succeed, must demonstrate that the will as written was of absolutely no effect because it was subject to an express condition which did not occur. If the will has any effect at all it may not be set aside in this will contest action, in which the competency of the testators and the due execution is not challenged.

The will as we examine it presents several problems. It is, in the first place, the will of two persons, and this is unconventional but by no means unprecedented. Item II indicated a purpose or occasion for executing a will and, standing alone, might possibly suggest that the entire will was designed to be effective only if the two testators perished in a common disaster. Express common disaster conditions are set out in Items III, IV and V, but they do not appear in Items I, VI, VII and VIII. This raises a question as to what the testators had in mind when they included the provisions in some paragraphs but not others.

We agree generally with the contestants that the questions presented must be solved within the four corners of the will, and that extrinsic evidence as to what the testators may have intended is not admissible. The law draws a distinction between latent and patent ambiguities. The problems presented by this will are patent—that is, apparent to a person who reads the entire document with care. It is not inappropriate to resort to outside evidence of surrounding circumstances to identify the beneficiaries, to explain their relationship to the testators, or to show the nature and extent of the testators' holdings. When such explanatory material has been obtained, however, we must look primarily to the language of the will. These propositions are stated clearly in *Breckner v. Prestwood,* 600 S.W.2d 52, 55 (Mo.App. 1980), with citation of other cases.

Counsel have pointed to quite a few cases in which a testator has expressed a purpose or occasion for making a will, or has specified conditions to the effectiveness of the entire will or some part of it. The condi-

---

**3.** If judges will follow this practice in future court-tried cases, it will often be possible for the appellate court to dispose of a case finally on the basis of the trial judge's weighing of the evidence, without the need for possibly imperfect fact finding at the appellate level, or for a remand to permit the trial court to find additional facts.

742

tions often relate to death in a common disaster. These cases are helpful but, in the final analysis, we must depend on our analysis of the particular will before us. We reach our conclusion almost entirely on the basis of our reading of the will. Factual matters play a very small part. When the factual disputes are minimal, furthermore, an appellate court is as capable of interpreting and construing a written instrument as is the trial court.[4]

It is perfectly possible to execute a will which has no effect at all unless a specified condition is performed or occurs. If such a condition is expressed, it will be enforced. *Robnett, supra.* Unless the language is compelling, however, courts hesitate to construe language of purpose or occasion for making a will as establishing a condition precedent to the very effectiveness of the will.[5] Courts, furthermore, are disposed to adopt any reasonable construction which will avoid intestacy.[6]

Turning to the will at hand, Item II does not say in so many words that the document is to be totally ineffective only if John and Cecile die in a common disaster. If this were the intention, it could be expressed much more clearly. The language may well be interpreted as stating a purpose rather than as establishing a condition.

The contestants argue that the repetition of the language of condition in Items III, IV and V reinforces their argument that the entire will was intended to be conditional on the death of both testators in a common disaster. This circumstance, however, strongly supports the opposite position. Inasmuch as Items I, VI, VII and VIII con-

tain no conditional language, the only reasonable conclusion is that the testators intended that these clauses be treated in a manner different from the conditional clauses. The different treatment, coupled with the lack of a positive command in Item II, persuade us that the testators intended that the unconditional clauses remain effective, so that the will may be probated as the will of the survivor. It is not for us to speculate as to why the testators made some clauses of the will conditional and others unconditional, once our task of construction is performed.

The trial court cited *Robnett* in support of its finding for contestants, and Judge Greene mentioned the case in his dissenting opinion in the Court of Appeals. In *Robnett,* however, the expressed condition appeared just before the only substantial dispositive clause, and the court found that the condition governed the entire will. The *Robnett* opinion cited an earlier Massachusetts case, *Damon v. Damon,* 8 Allen (90 Mass.) 192 (1864), in which a purpose of protecting against possible mishaps during a trip to Cuba was mentioned at the beginning of a will and an express condition was attached to one paragraph of a will but not to the other two paragraphs. 49 Mo. at 174–175. The *Damon* court held that the later clauses were not conditional and that the will was properly admitted to probate. We believe that that case is closer to the present situation than is *Robnett.*

The contestants also rely on a more recent Missouri case, *Gehring v. Henry,* 332 S.W.2d 873 (Mo.1960), in which the court inserted a period where some punctuation

4. See *Willis v. Robinson,* 291 Mo. 650, 678, 237 S.W. 1030, 1037 (1922); and also opinion of Gunn, P.J., in *Zaharopoulos v. Sprenger,* 605 S.W.2d 143, 146 (Mo.App.1980), holding that the rule of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), has no application to this situation.

5. *Vaught v. Vaught,* 247 Ark. 52, 444 S.W.2d 104, 106 (Ark.1969); *In re Taylor's Estate,* 119 Cal.App.2d 574, 259 P.2d 1014, 1018 (Cal.App. 1953); *In re Trager's Estate,* 413 Ill. 364, 108 N.E.2d 908, 910 (Ill.1952); *Warren v. Hartnett,* 561 S.W.2d 860, 862 (Tex.Civ.App.1977); *Matter of Estate of Gardner,* 615 P.2d 1215, 1217

(Utah 1980); *Mason v. Mason,* 268 S.E.2d 67 (W.Va.1980); 79 Am.Jur.2d *Wills* § 745 (1975); 94 C.J.S. *Wills* § 152 (1956); Annot., 1 A.L. R.3d 1048; 1 Page on Wills, Bowe-Parker Revision, § 9.5 (1960).

6. *Wood v. Greimann,* 165 F.2d 637, 638 (9th Cir.1948); *In re Trager's Estate,* 413 Ill. 364, 108 N.E.2d 908, 910 (Ill.1952); *Warren v. Hartnett,* 561 S.W.2d 860, 862 (Tex.Civ.App.1977); *Matter of Estate of Gardner,* 615 P.2d 1215, 1217 (Utah 1980); *Mason v. Mason,* 268 S.E.2d 67, 68 (W.Va.1980).

was needed in the process of construing a joint will and found that one bequest was conditional. This case is not helpful to them because the condition was attached only to the single bequest in question, and the will contained mutual and unconditional bequests by the spouses in favor of each other.

The contestants argue that the court must either give effect to all clauses of the will, or to no part of it. This is wide of the mark. The court may give effect to unconditional bequests, while holding that conditional bequests fail if the condition on which they depend is not established. Such a holding would be strictly in accordance with the language of the will and would give effect to all terms as they are written. Few wills of any length do not contain some conditional bequests. We observe that the conditional items in III, IV and V are bequests of sums of money or specific property and that if they were to fail there would still be a complete testamentary scheme. Item VI operated to disinherit Cecile's son Lee James Konz, who would take her entire estate if she were to survive and were to die intestate, and who would have a possible statutory claim under § 474.240, RSMo, if not mentioned in her will. Item VII is a general residuary clause of a type which is common among childless couples. One-third of the residue is left to John's brother, one-third to Cecile's sister, and one-third to charity. There would be no partial intestacy if Items III, IV and V were not given effect.

It would also be unusual, if Cecile did not want her son to have any part of her property, for her to make a will in which he would get only $1.00 if she and John were to die in a common disaster, but all her property if she were to survive John only to die herself in short order from a cause unrelated to his death.

The contestants and the trial judge make much of the use of "we" in all of the items, including the unconditional ones. This circumstance is not of great significance. As we have observed, it is perfectly possible, though unusual, for two people to make their wills in the same document. There is much learning about "joint and mutual wills," most of which has no significance in this case. One possibility, recognized by the trial court, is that the will was intended to be contractual, with John and Cecile agreeing with each other that the survivor would not alter the will. The judge properly observed that no issue on this point was present in the case, inasmuch as John did not try to alter or to revoke the will after Cecile died. Those who choose to use the joint form of testation, however, might very probably use the word "we" in all the bequests without detracting from the effectiveness of the document as the separate will of each testator.

It would be just as improper to consider subsequent events in construing this will as it would be to consider extrinsic evidence of the testators' intentions. *See* 4 Page on Wills, Bowe-Parker Revision, § 30.7 (1960); *In re Estate of Graves,* 203 Kan. 762, 457 P.2d 71 (1969). The will continues in effect until modified or revoked. People often procrastinate even though circumstances change and new wills should be made. The law provides for certain circumstances which operate to modify or annul existing wills. In other situations a will, once executed, remains in effect until revoked by one of the methods prescribed by law. The subsequent adoption of Catherine Helmer and Louis Greener may not be considered in construing the will before us. We have no occasion to express any opinion about the rights they might establish under § 474.240, RSMo (1982 Supp.).[7] Nor is the subsequent death of John's brother, C.E. Greener, after the will was executed but long before John and Cecile died, a matter which may be considered in construing their will. We also have no reason to probe the effect under § 474.460, RSMo (1982 Supp.) of the death of a person to whom a fraction of the residue has been bequeathed.

The dissenting opinion argues that an invalidating condition which permeates the

7. Note 2, *supra.*

entire will was "conclusively established" in Item II and that no further construction is necessary or permissible. Legion cases hold that a will must be construed in its entirety and recognize the possibility that a will may contain provisions which are at war with each other, so that all cannot be given full effect. *See, e.g., First National Bank of Kansas City v. Stevenson*, 293 S.W.2d 362 (Mo.1956); *Scott v. Fulkerson*, 332 Mo. 734, 60 S.W.2d 34 (1933). Although we do not believe that Item II is so clear as the dissent would have it, we believe that our conclusion is sound even if it be considered that there is a flat repugnancy.

We conclude that Item II did not have the effect of making the entire will conditional on the death of the testators in a common disaster. The judgment is therefore reversed and the case is remanded to the Circuit Court of Greene County with instructions to declare that the will in issue is the last will and testament of John Greener.

RENDLEN, C.J., and GUNN and BILLINGS, JJ., concur.

WELLIVER and HIGGINS, JJ., dissent in separate opinions filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of HIGGINS, J.

WELLIVER, Judge, dissenting.

I respectfully dissent.

I share the concern expressed in Judge Higgins' dissent that it is not the province of this Court "to make a will where none was intended." Although courts eschew intestacy, no writing should be strained beyond reason merely to preserve it. The evidence found within the four corners of the challenged will compels the conclusion that the testators intended the entire will to operate only if both of them died in a common disaster. The principal opinion effectively rewrites the will under the guise of interpreting it.

The principal opinion in effect holds that the document contains three wills. Not only is there the will of both parties that is contingent upon the death of both in a common disaster, but there are also the individual wills of the two testators. This holding is at odds with the intent embodied in Item II, which states that the testators jointly owned all their property "of any kind and character" and that the document was executed to dispose of that property in the event the testators died in a common disaster. It is illogical for each testator to make his own, separate will knowing, and expressly stating, that if one dies and the other survives, all the property will pass to the survivor by operation of law. Especially is this true when, as here, all but one dollar of the estate is disposed of generally through the residuary clause.

The will manifests an unequivocal intent on the part of the testators to provide for Kathleen Konz and Louis Konz, the children of Cecile Greener's adopted son, Lee James Konz. In Item III the testators left $5000 in trust for each of the children for the primary purpose of financing the children's college education. By the standards of 1961, when the will was executed, $5000 was hardly a paltry sum. The strong concern for the children is further evidenced by the fact that the testators subsequently adopted the children as their own.[1] The principal opinion's construction of the will produces the anomalous result that the children, although clearly a concern foremost in

---

1. The principal opinion argues that the subsequent adoption of Kathleen and Louis is a factor that may not be considered when construing the will. Yet "in arriving at [the testators'] intention the relation of the testator[s] to the beneficiaries named in the will *and the circumstances surrounding [them] at the time of its execution* are to be taken into consideration." *Ussher v. Mercantile Trust Co.*, 328 S.W.2d 699, 702 (Mo.1959) (emphasis added). The adoption is the product of circumstances that

apparently existed at the time the will was executed. As noted below, it no doubt was related to the testators' reasons for disinheriting Lee, the children's father and Cecile's adopted son. Although the fact of adoption itself should have no bearing on the construction of the will, the circumstances underlying the adoption, insofar as they shed light on the testators' intent, are clearly relevant and should be considered.

the minds of the testators, receive nothing unless the testators die in a common disaster.[2] If the entire will is contingent, however, the children are still provided for notwithstanding the intestacy. Cecile's husband, John Greener, became the sole owner of all jointly held property upon Cecile's death,[3] and at John's death Kathleen and Louis receive John's entire estate as his adopted children.

The will also manifests a clear intent to disinherit Cecile's adopted son, Lee, no doubt for reasons not unrelated to those underlying the testators' adoption of Kathleen and Louis. The principal opinion makes much of this fact, arguing that

[i]t would ... be unusual, if Cecile did not want her son to have any part of her property, for her to make a will in which he would get only $1.00 if she and John were to die in a common disaster, but all her property if she were to survive John only to die herself in short order from a cause unrelated to his death.

That argument is unpersuasive, for it presupposes that if the entire will in question were contingent, Cecile would not have executed a new will disinheriting Lee had she survived her husband.[4] That inference is sheer speculation. Cecile of course did not survive her husband, but it does not frustrate her intent to disinherit Lee if the entire will is construed as contingent. Lee is not an heir of John, and consequently he receives nothing from John through intestate succession.

The principal opinion produces a marked disparity between the bequests in the contingent and noncontingent portions of the will. First, as noted above, it is curious that the testators would have provided for Kathleen and Louis only in the event that the testators died in a common disaster. Second, there is a disparity between the contingent and noncontingent portions of the will among the bequests to C.E. Greener, John's brother, and Marge Voss, Cecile's sister. On the one hand, under Items IV and V, which are expressly contingent, C.E. receives $1200 and Marge receives Cecile's jewelry, furs, clothing, and silver. On the other hand, there are no specific bequests to C.E. and Marge in the noncontingent portion of the will, but instead both receive one-third of the residual estate, and the Immaculate Conception Church of Springfield receives the other one-third, after one dollar is paid to Lee.[5] It is indeed curious

2. This does not, nor should it, consider the effect of § 474.240(1), RSMo Supp.1982, which makes provision for pretermitted children. That section provides:

If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate, unless:
(1) It appears from the will that the omission was intentional;
(2) When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child; or
(3) The testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator, the amount of the transfer or other evidence.
Under the facts of this case it is far from clear that this section would provide the children with a meritorious action against the estate.

3. Item II of the will indicates that at the time the will was executed in 1961, John and Cecile owned jointly all their property "of any kind and character." Nothing in the record indicates whether any after-acquired property was held otherwise. We can infer that it was not, because, as the principal opinion notes, "[t]he record shows no attempt to offer the will for probate as the will of Cecile, and no evidence that any administration was had on her estate."

4. If the will is construed as entirely contingent, Cecile could very well have executed another will had she survived John. Although joint wills may be construed as contracts between the parties that the survivor will not alter the will, had Cecile survived John the contingency upon which the will was based—that the testators die in a common disaster—would not have happened, and therefore the condition precedent to the contract would not have occurred.

5. The record reflects that C.E. Greener predeceased both of the testators and left no lineal descendants. Thus, under the principal opinion, Marge and the church, parties to this case, each fortuitously receive one-half of the residual estate. See §§ 474.460, .465, RSMo Supp. 1982.

that the testators would have provided that C.E. and Marge receive specific bequests before the remainder of the estate is distributed in the event the testators died in a common disaster but would not have so provided in the event the contingency did not occur. Furthermore, the executor has the power "to immediately sell any real and personal property not specifically bequeathed . . . and reduce the same to cash," and thus if the contingency does not occur it is possible that the executor could sell Cecile's personal effects and thereby deprive Marge of the items of sentimental value that Cecile obviously wanted her sister to have. When viewed in this regard, the principal opinion's construction is wholly untenable.

The will in question is a hallmark of inartful draftsmanship. That fact, however, does not give this Court license to rewrite it. Read as a whole, the challenged will manifests the intent of the testators that the entire document be contingent upon the deaths of the testators in a common disaster. The principal opinion ignores that intent.

HIGGINS, Judge, dissenting.

The adopted children of John Robert and Cecile M. Greener contest the document in issue as the will of John Robert Greener. The document was jointly executed by John and Cecile July 11, 1961. Cecile died October 10, 1979; John died December 30, 1979. They did not die in, or by reason of, a common disaster.

The question is whether the document is a "contingent", or "conditional" will. The contingency or condition is "a common disaster to both" John and Cecile, an event which did not occur, and in which case there would be no will. The trial court so found and entered judgment for the contestants.

When the intent of the testator is expressed in plain and unambiguous language, courts have no authority to find otherwise, provided the intent is not contrary to the law. *First National Bank of Kansas City v. Danforth,* 523 S.W.2d 808, 816–17 (Mo.), *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975); *First National Bank of Kansas City v. Waldron,* 406 S.W.2d 56, 58–59 (Mo.1966). The intention of Mr. and Mrs. Greener that the document was to have no effect unless the condition occurred was conclusively expressed in Item II, placed in the document prior to all dispositive clauses:

All of our property of any kind and character is at the present time so arranged that it will pass unto the other party in the event of the death of one of the parties herein. Therefore, the purpose of this will is to devise and bequeath the property of the parties in the event of a common disaster to both John Robert Greener and Cecile M. Greener.

There is no ambiguity in this expression to give rise to the majority's construction; for this Court to go beyond it is, in my opinion, to make a will where none was intended. Rule 73.01; *Robnett v. Ashlock,* 49 Mo. 171 (1872).

In *Robnett* the Court was faced with a will which recited:

This 22d May, 1856. I this day start to Kentucky; I may never get back. If it should be my misfortune, I give my property to my sisters' children (Katharine, Polly, Sally and Margaret); by giving Margaret's children as much again as the others, as they are the most helpless. I give my watch to the youngest niece or nephew, as long as she or he lives, and so on; I give it to the family for a keepsake. You can prove the truth of this by the hand-write—all the neighbors may. The Lord prosper and bless us in this world and the world to come.

*Robnett,* 49 Mo. at 172. The Court held:

[T]he words after the first phrase . . . mean, If it should be my misfortune never to get back; or, If I die during my absence I give, etc. It is not easy to attach any other meaning to them, and with that meaning the bequest is made conditional upon his not returning, and could only become operative upon the contingency of his dying before his return.

*Robnett,* 49 Mo. at 175. The Greener's intent to create a conditional will is more explicit than the testator's intent in *Robnett.* Absence of conditional language before the second devise did not defeat the express intent of the testator in *Robnett;* such an absence should not defeat the express intent of the testators in this case.

Accordingly, I would affirm the judgment.